**FILED**

APR 2 5 2005

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE HOLLINGER INTERNATIONAL, INC. SECURITIES LITIGATION | ) ) ) ) |
| This Document relates To: | ) ) |
| ALL ACTIONS | ) ) ) |

Cons. Civil Action No. 04-C-0834

JUDGE DAVID H. COAR

CLASS ACTION

**REPLY MEMORANDUM IN SUPPORT OF KPMG LLP's MOTION TO DISMISS**
**THE SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

John F. Hartmann, P.C.
Michael Duffy
Valarie Hays
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
Telephone:    (312) 861-2000
Facsimile:    (312) 861-2200

DATED:      April 25, 2005

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

I.    COUNT I FAILS TO STATE A SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST KPMG. ..................................................................................... 1

    A.    KPMG Cannot Be Held Liable For Statements Made By Others. ........................... 1

    B.    Plaintiffs Have Failed To Allege Specific Facts Creating A Strong Inference That KPMG Issued A False Audit Opinion With Scienter..................... 2

        (1)    Plaintiffs' "Admissions" Arguments. ................................................. 2

        (2)    Plaintiffs' "Direct Knowledge" Allegations. ................................... 3

        (3)    Plaintiffs' "Red Flag" Arguments................................................... 3

        (4)    Plaintiffs' GAAP Arguments.......................................................... 4

        (5)    Plaintiffs' GAAS Arguments.......................................................... 5

        (6)    Plaintiffs' Motive Argument........................................................... 5

        (7)    Plaintiffs' Argument Regarding Hollinger Inc. ............................... 6

        (8)    Plaintiffs' "Access" Argument. ...................................................... 6

II.    COUNT III FAILS TO STATE A SECTION 18 CLAIM AGAINST KPMG. ................... 7

    A.    Plaintiffs' Section 18 Claim Is Time-Barred. ................................................ 7

        (1)    Sarbanes-Oxley Did Not Extend Section 18's Statute Of Limitations. ..................................................................................... 7

        (2)    Plaintiffs Were On Inquiry Notice Of Their Section 18 Claim More Than A Year Before This Lawsuit Was Filed. ............................... 9

    B.    Plaintiffs' Section 18 Claim Fails To Allege "Eyeball Reliance" On Any Of KPMG's Audit Reports. ........................................................................ 9

III.    COUNT VIII FAILS TO STATE AN AIDING AND ABETTING CLAIM AGAINST KPMG. ....................................................................................... 10

    A.    Plaintiffs' Aiding And Abetting Claim Is Preempted By SLUSA. ....................... 10

    B.    Plaintiffs Lack Standing To Assert Their Derivative Claim................................. 13

i

**Page**

C.    Plaintiffs Fail To Allege That KPMG Knowingly And Substantially Participated In Any Breach Of Duty.....................................................................13

(1)    Plaintiffs Have Not Alleged Facts (As Opposed To Conclusions) Establishing Knowledge. ...............................................................14

(2)    Plaintiffs Have Not Alleged Facts Showing Substantial Assistance. ........15

CONCLUSION.......................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alessi v. Beracha*,
    244 F. Supp.2d 354 (D. Del. 2003).................................................................. 12

*Anglo American Security Fund, L.P. v. S.R. Global International Fund, L.P.*,
    829 A.2d 143 (Del. Ch. 2003)........................................................................ 14

*Atencio v. Smith Barney, CitiGroup, Inc.*,
    2005 WL 267556 (S.D.N.Y. February 2, 2005) ............................................... 11

*Blaz v. Belfer*,
    368 F.3d 501 (5th Cir. 2004) ......................................................................... 8

*Carley Capital Group v. Deloitte & Touche, LLP*,
    27 F. Supp.2d 1324 (N.D. Ga. 1998)............................................................... 6

*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    2005 WL 44434 (2d Cir. 2005)........................................................... 10, 11, 12

*Dacey v. Morgan Stanley Dean Witter & Co.*, 263 F. Supp.2d 706 (S.D.N.Y. 2003) ................. 11

*Fidel v. Farley*,
    392 F.3d 220 (6th Cir. 2004) ....................................................................... 3, 7

*Fujisawa Pharmaceutical Co. v. Kapoor*,
    115 F.3d 1332 (7th Cir. 1997) ....................................................................... 9

*Gordon v. Buntrock*,
    2000 WL 556763 (N.D. Ill. April 28, 2000)...................................................... 11

*Gray v. Seaboard Securities, Inc.*,
    241 F. Supp.2d 213 (N.D.N.Y. 2003),
    2005 WL 551477 (2d Cir. March 9, 2005) ....................................................... 11

*Green v. Ameritrade, Inc.*,
    279 F.3d 590 (8th Cir. 2002) ........................................................................ 11

*Hines v. ESC Strategic Funds*,
    1999 WL 1705503 (M.D. Tenn. September 17, 1999)......................................... 11

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000) ...................................................................... 10

**Page(s)**

*In re Alamosa Holdings, Inc.*,
　　2005 WL 712001 (N.D. Tex. March 28, 2005) ................................................................. 8

*In re American Continental Corp./Lincoln Savings and Loan Securities Litigation*,
　　794 F. Supp. 1424 (D. Ariz. June 16, 1992) ....................................................................... 10

*In re Enron Corp. Sec. Derivative & ERISA Liitig.*,
　　235 F. Supp.2d 549 (S.D. Tex. 2002) ................................................................................. 6

*In re Frederick's of Hollywood, Inc. Shareholders Litigation*,
　　1998 WL 398244 (Del. Ch. July 9, 1998) ........................................................................ 15

*In re Global Crossing*,
　　322 F. Supp. 319 (S.D.N.Y. 2004) .......................................................................... 1, 5, 6, 8

*In re MDC Holdings Securities Litigation*,
　　754 F. Supp. 785 (S.D. Cal. 1990) ...................................................................................... 10

*In re Merrill Lynch & Co., Inc.*,
　　272 F. Supp.2d 243 (S.D.N.Y. 2003) ................................................................................. 8

*In re MicroStrategy, Inc. Sec. Litig.*,
　　115 F. Supp.2d 620 (E.D. Va. 2000) .................................................................................. 6

*In re OODC, LLC*,
　　321 B.R. 128 (Bankr. D. Del. 2005) ................................................................................... 14

*In re SCB Computer Technology, Inc. Sec. Litig*,
　　149 F. Supp.2d 334 (W.D. Tenn. 2001) ............................................................................. 4

*In re Suprema Specialties, Inc. Securities Litigation*,
　　334 F. Supp.2d 637 (2004) ...................................................................................... 7, 8, 10

*Kennedy v. Venrock Associates*,
　　348 F.3d 584 (7th Cir. 2003) .............................................................................................. 8

*Kircher v. Putnam Funds Trust, et. al.*,
　　2005 WL 757255 (7th Cir. April 5, 2005) ......................................................................... 11

*Lalondriz v. USA Networks, Inc.*,
　　68 F. Supp.2d 285 (S.D.N.Y. 1999) .................................................................................. 11

*Magna Investment Corp. v. John Does One Through Two Hundred*,
　　931 F.2d 38 (11th Cir. 1991) .............................................................................................. 7

iv

**Page(s)**

*McGann v. Ernst & Young,*
  102 F.3d 390 (9th Cir. 1996) ................................................................... 7

*Newby v. Enron Corp.,*
  394 F.3d 296 (5th Cir. 2004) ................................................................... 6

*Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP,*
  2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) .................................................... 6

*Oliver v. Boston Univ.,*
  2000 WL 1091480 (Del. Ch. July 25, 2000).................................................... 15

*Rales v. Blasband,*
  634 A.2d 927 (Del. 1993) ..................................................................... 13

*Reiger v. Altris Software, Inc.,*
  117 F. Supp.2d 1003 (S.D. Cal. 2000)............................................................ 4

*Riggs Partners LLC v. Hub Group, Inc.,*
  2002 U.S. Dist. Lexis 20649 (N.D. Ill. Oct. 25, 2002) ....................................... 7

*Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  292 F.3d 1334 (11th Cir. 2002) ................................................................ 11

*Rombach v. Chang,*
  355 F.3d 164 (2d Cir. 2004)..................................................................... 8

*Rowinski v. Salomon Smith Barney, Inc.,*
  398 F.3d 294 (3rd Cir. 2005) .................................................................. 11

*Saito v. McCall,*
  2004 WL 3029876 (Del. Ch. December 20, 2004)............................................. 15

*SEC v. Zanford,* 535 U.S. 813 (2002) ............................................................ 11

*Tooley v. Donaldson,*
  845 A.2d 1031 (Del. 2004) .................................................................... 13

*TriContinental Indus. Ltd. v. Anixter,*
  184 F. Supp.2d 786 (N.D. Ill. 2002) ............................................................. 1

*Witzman v. Lehrman, Lehrman & Flom,*
  601 N.W.2d 179 (Minn. 1999).................................................................. 15

*Zirn v. VLI Corp.,*
  1989 WL 79963 (Del. Ch. July 17, 1989)....................................................... 14

**Page(s)**

*Zucker v. Sasaki,*
    963 F. Supp. 301 (S.D.N.Y. 1997) ..................................................................................... 5

**Statutes**

15 U.S.C. § 78bb(f)(3) ................................................................................................................. 12

15 U.S.C. § 78r ........................................................................................................................ 7, 8

15 U.S.C. § 78u-4(b)(1) ............................................................................................................... 2

28 U.S.C. § 1658........................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 23.1 .................................................................................................................... 13

## I.   COUNT I FAILS TO STATE A SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST KPMG.

### A.   KPMG Cannot Be Held Liable For Statements Made By Others.

Plaintiffs obfuscate on whether they are seeking to hold KPMG liable for statements made by others. On the one hand, plaintiffs suggest that their Rule 10b-5 claim against KPMG is based only on KPMG's audit reports. (Pl. Resp. at 32 n.23) On the other hand, plaintiffs also suggest that, notwithstanding *Central Bank*, KPMG can be held liable for statements made by others. (*Id.* at 49.) This latter suggestion is without merit. No post-*Central Bank* decision in this circuit supports the proposition that a defendant can be held liable under Section 10(b) and Rule 10b-5 for statements made by others. To the contrary, this court has made clear that a defendant can be held liable under the statute and rule only for its own statements or omissions. *See, e.g., TriContinental Indus. Ltd. v. Anixter,* 184 F. Supp.2d 786, 788 (N.D. Ill. 2002). Otherwise, any plaintiff could avoid *Central Bank* merely by alleging the conclusion that a defendant participated in a scheme to defraud.

Furthermore, this case is not like *In re Global Crossing*, 322 F. Supp.2d 319 (S.D.N.Y. 2004) or the other "scheme" cases on which plaintiffs rely. (Pl. Resp. at 49) In *Global Crossing*, the court held that Arthur Andersen potentially could be held responsible for statements made by Global Crossing based on allegations that (i) Andersen's participation in Global Crossing's public statements was so substantial that the accounting firm could be deemed to have *made* the statements (*id.* at 333-34); and (ii) Andersen was the "mastermind", "chief architect" and "executor" of the scheme to defraud in that case. *Id.* at 335-36. Here, there are no allegations of fact suggesting that KPMG's participation in Hollinger's public statements was so substantial

that the firm could be deemed to have *made* them, and plaintiffs specifically allege that defendant Conrad Black was the "chief architect" of the fraud at Hollinger. (Cmplt. at ¶ 2)[1]

In sum, KPMG cannot be held liable for statements made by others. Thus, plaintiffs' Section 10(b) and Rule 10b-5 claim against KPMG rises or falls on whether the complaint alleges particularized facts sufficient to create a strong reference that KPMG issued a false audit report with scienter. *See* 15 U.S.C. § 78u-4(b)(1).

### B. Plaintiffs Have Failed To Allege Specific Facts Creating A Strong Inference That KPMG Issued A False Audit Opinion With Scienter.

Plaintiffs' answering brief only highlights that they have failed to satisfy the PSLRA's heightened pleading standards with respect to KPMG. Indeed, instead of identifying particularized allegations of fact in the complaint creating a strong inference that KPMG acted with scienter, plaintiffs make unfounded claims that KPMG has "admitted" fraud and simply recapitulate the complaint's conclusory allegations of fraud against KPMG.

#### (1) Plaintiffs' "Admissions" Arguments.

Plaintiffs' assertions that KPMG has admitted fraud and that the complaint states a claim for securities fraud against it (*see* Pl. Resp. at 32) are unfounded and disingenuous. There is no support anywhere for plaintiffs' claim that "KPMG does not dispute that its audit reports on Hollinger's financial statements for fiscal years 1999 through 2002 were false and misleading." (*Id.*) Further, plaintiffs mislead this Court when they claim that "KPMG concedes that the complaint 'contains concrete examples of activities that, if proven, would establish not only mismanagement and other corporate malfeasance, but truly fraudulent behavior.'" (*See* Pl. Resp.

---

[1] Plaintiffs' reliance on "agency liability" case law is also misplaced. (*See* Pl. Resp. at 50.) Plainly, this is not a case in which plaintiffs seek to hold KPMG liable for a statement made by an "agent" of the firm.

at 32.) This, of course, distorts the point of KPMG's observation, which related explicitly to the allegations in the complaint against the ***Hollinger-related*** defendants. (*See* KPMG Mem. at 6) KPMG's point is that, in stark contrast to plaintiffs' concrete allegations of fraud against other defendants, plaintiffs' allegations with respect to KPMG are entirely boilerplate and conclusory. Instead of responding to this point, plaintiffs have mischaracterized it.

### (2)    Plaintiffs' "Direct Knowledge" Allegations.

Plaintiffs' claim that "KPMG had direct knowledge of the fraud" (Pl. Resp. at 35) is no better. For example, plaintiffs assert that "KPMG had direct knowledge of the fraud because it was Hollinger's auditor for the asset sales and related-party deals with Horizon, Bradford and others" and that KPMG "actually collaborated with Hollinger management on drafting the disclosures concerning the related-party transactions. (Pl. Resp. at 35)  In support of these assertions, plaintiffs cite to paragraph 397 of the complaint. (*Id.*)  Paragraph 397 does not contain a single particularized fact showing that KPMG had knowledge of fraud, however. Rather, paragraph 397 alleges broadly that, because it was Hollinger's auditor, KPMG had "virtually limitless access" to information about the Hollinger's operations.  Courts have repeatedly held that general and boilerplate "access" allegations of this type are insufficient to show scienter. *See, e.g., Fidel v. Farley*, 392 F.3d 220, 229-30 (6th Cir. 2004).

### (3)    Plaintiffs' "Red Flag" Arguments.

Plaintiffs argue that KPMG ignored "red flags" (Pl. Resp. at 35), and that these "red flags" create an inference of scienter. (*Id.* at 36.)  The case law makes clear, however, that merely labeling something a "red flag" is not enough.  Rather, in order to show scienter, "red flags" must "include[] specific facts suggesting the independent accountant consciously entertained doubts about the veracity of its client's financial disclosures, either from a client [or] third party informing the accountant of the client's fraud, or from contemporaneous statements

3

made by the accountant . . . ." *Reiger v. Altris Software, Inc.*, 117 F. Supp.2d 1003, 1012 (S.D. Cal. 2000) (emphasis added). The "red flags" must be closer to "smoking guns" than to mere warning signs. *In re SCB Computer Technology, Inc. Sec. Litig*, 149 F. Supp.2d 334, 362 (W.D. Tenn. 2001). Plaintiffs' so-called "red flags" flunk these tests. For example, plaintiffs allege that defendant Conrad Black "had an open disdain for corporate governance; that "there were numerous related party transactions with unusual structure"; and that "Hollinger was controlled by a small group of people." (*See* Pl. Resp. at 35) None of these generalities contains specific facts showing that KPMG consciously entertained doubts about the veracity of Hollinger's public disclosures. None is a "smoking gun" establishing that KPMG issued an audit report with fraudulent intent.

### (4)      Plaintiffs' GAAP Arguments.

Plaintiffs concede that the mere existence of GAAP violations is insufficient to establish scienter. (Pl. Resp. at 37) Nevertheless, plaintiffs argue that GAAP violations are "relevant" when the complaint also alleges that an auditor ignored "red flags." This argument has no merit where, as here, plaintiffs' "red flag" allegations are deficient in their own right.

Plaintiffs also argue that "the widespread scope" and "magnitude of the fraud" at Hollinger support an inference of scienter. (Pl. Resp. at 39) This argument also lacks merit since plaintiffs nowhere quantify the impact of the fraud on Hollinger's financial statements for any given year. Plaintiffs' failure to do so is both telling and understandable, since the gist of their complaint is *not* that Hollinger failed to account in its financial statements for all or most of the transactions at issue. Rather, the thrust of the complaint is that the transactions were inappropriate, that some were mischaracterized, and that some were not identified as related-party transactions. Whatever the reason, plaintiffs have failed to allege facts establishing that the impact of the fraud on Hollinger's financial statements was so great that KPMG, as

4

Hollinger's auditor, could not have missed it. Absent such allegations, plaintiffs' "scope" and "magnitude" arguments fail to support an inference of scienter.

### (5) Plaintiffs' GAAS Arguments.

Plaintiffs' arguments that KPMG violated GAAS (*see* Pl. Resp. at 38) are even more conclusory than the GAAS-related allegations in the complaint. Plaintiffs offer no particularized allegations of fact to support them. For example, plaintiffs assert that "KPMG was required by GAAS to assess the risk of material misstatements due to fraud, in particular, to investigate the "red flags" and to carefully review all related party transactions." (*Id.*) Plaintiffs also claim that KPMG violated GAAS by "failing to take into account Lord Black's dominance of the board" and his contempt for the Company's inadequate internal controls. (*Id.*) Yet, plaintiffs offer no specifics at all as to (i) what audit procedures GAAS requires with respect to any of these topics; (ii) what procedures KPMG actually performed; (iii) how KPMG's procedures fell short of the requirements of GAAS; or (iv) how any such defaults were the result of a state of mind equivalent to scienter. Absent such particularized allegations of fact, plaintiffs' scienter allegations against KPMG fall short. *See Zucker v. Sasaki*, 963 F. Supp. 301, 308 (S.D.N.Y. 1997) (dismissing claim against auditor where allegations referred "simply to violations of basic auditing principles without reference as to ***how*** [the auditor's] violations were the result of intentional deceit or ***how*** they rise to the level of recklessness") (emphasis added).

### (6) Plaintiffs' Motive Argument.

Based on a handful of cases from other circuits, plaintiffs argue that KPMG had a motive to commit fraud in order to maintain a lucrative consulting relationship with Hollinger. (Pl. Resp. at 40) Plaintiffs' reliance on these cases is misplaced, however. For example, unlike the plaintiffs in *In re Global Crossing*, plaintiffs here have not made specific allegations of fact showing that KPMG's consulting work for Hollinger International was so integral, large, or

otherwise important to KPMG's practice that the firm was willing to commit fraud in order to maintain it. *See In re Global Crossing*, 322 F. Supp.2d at 345. Furthermore, plaintiffs have not made specific allegations of fact showing that KPMG was heavily involved in the management of Hollinger, had a vested interest in Hollinger International's performance, or that it was intimately familiar with all of the various defendants' fraudulent activity. *See Carley Capital Group v. Deloitte & Touche, LLP*, 27 F. Supp.2d 1324, 1339 (N.D. Ga. 1998); *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp.2d 620, 655 (E.D. Va. 2000); *In re Enron Corp. Sec. Derivative & ERISA Liitig.*, 235 F. Supp.2d 549, 706-07 (S.D. Tex. 2002). Absent such allegations, plaintiffs' motive claim falls short.

### (7) Plaintiffs' Argument Regarding Hollinger Inc.

Plaintiffs also argue that KPMG's scienter may be inferred because the firm also served as auditor of Hollinger Inc., Hollinger International's parent corporation. (Pl. Resp. at 42) This argument is wrong as a matter of fact. The KPMG firm that audited Hollinger International did *not* audit Hollinger Inc. Rather, Hollinger Inc. was audited by KPMG LLP (Canada) – a completely separate entity. As numerous courts have held, "[i]t is well recognized that 'member firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name.'" *In re Royal Ahold*, 351 F. Supp.2d at 385 n.41 (internal citations omitted); *see also Newby v. Enron Corp.*, 394 F.3d 296, 301, 308 n.22 (5th Cir. 2004); *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, 2004 WL 112948, at *3 (S.D.N.Y. Jan. 22, 2004).

### (8) Plaintiffs' "Access" Argument.

Finally, plaintiffs claim that their boilerplate allegation that KPMG had "virtually limitless access" to Hollinger International financial records is sufficient to create a strong inference of scienter on the part of KPMG. (Pl. Resp. at 43) Plaintiff is wrong. Such broad

6

allegations of "unfettered access" are simply not sufficient to show scienter. *See, Fidel*, 392 F.3d at 229-30; *see also Riggs Partners LLC v. Hub Group, Inc.*, 2002 U.S. Dist. Lexis 20649, at *31 (N.D. Ill. Oct. 25, 2002) (internal citations omitted) ("an independent accountant's relationship and acquired-familiarity with its client ***does not impute the accountant with knowledge of every idiosyncratic detail*** associated with the client's business") (emphasis supplied). This is particularly true where, as here, the complaint does not allege facts showing that KPMG played a primary role in the key transactions at issue. *In re Spiegel, Inc. Sec. Litig.*, 2004 WL 153844, at *37 (Jul. 8, 2004). Here, plaintiffs can make no specific allegations of fact showing that KPMG played such a role.

## II.   COUNT III FAILS TO STATE A SECTION 18 CLAIM AGAINST KPMG.

### A.   Plaintiffs' Section 18 Claim Is Time-Barred.

#### (1)   Sarbanes-Oxley Did Not Extend Section 18's Statute Of Limitations.

Contrary to plaintiffs' assertion, the Sarbanes-Oxley Act ("SOX") did not extend Section 18's statute of limitations. *See* 15 U.S.C. § 78r. SOX implemented a longer statute of limitations only for "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . ." 28 U.S.C. § 1658. This new limitations period does not apply to Section 18.

A Section 18 claim is not a fraud claim. Unlike Section 10(b)(5) claims, liability under Section 18 does not require proof of scienter. *See, e.g., McGann v. Ernst & Young,* 102 F.3d 390, 395 (9th Cir. 1996); *Magna Investment Corp. v. John Does One Through Two Hundred,* 931 F.2d 38, 40 (11th Cir. 1991); *In re Suprema Specialties, Inc. Securities Litigation,* 334 F. Supp.2d 637, 654 (2004). Therefore, Section 18 is analogous to Sections 11 and 12(a) of the Securities Act of 1933, and Section 14 of the Securities Act of 1934, none of which require an intent to defraud. *See e.g., In re Global Crossing, Ltd. Securities Litigation,* 313 F. Supp.2d

7

189, 195 (S.D.N.Y. 2003); *In re Suprema Specialties, Inc. Securities Litigation*, 334 F. Supp.2d at 648; *Kennedy v. Venrock Associates*, 348 F.3d 584, 593 (7th Cir. 2003); *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).

Courts have repeatedly held that the SOX does not extend the statute of limitations for claims brought under Sections 11, 12(a)(2), and 14 because those claims do not have an intent element and, thus, are not fraud causes of action. *See In re Global Crossing, Ltd. Securities Litigation*, 313 F. Supp.2d at 196-97 (sections 11 and 14); *In re Alamosa Holdings, Inc.*, 2005 WL 712001, at *27 (N.D. Tex. March 28, 2005); (Section 11); *In re Merrill Lynch & Co., Inc.*, 272 F. Supp.2d 243, 265 (S.D.N.Y. 2003) (sections 11 and 12(a)(2)). The same reasoning applies equally to Section 18 claims, which are not fraud causes of action either.

Plainly, if Congress had intended to change the statute of limitations for Section 18 claims, it could have done so explicitly, but it did not. *See* 15 U.S.C. § 78r. Similarly, SOX could have broadly stated that it applies to all actions brought under the securities laws, but it did not. Instead, it explicitly refers to a particular subset of securities *fraud* cases – a subset that does not encompass Section 18. *See In re Global Crossing, Ltd. Securities Litigation*, 313 F. Supp. 2d at 197. The single 5th Circuit case cited by the plaintiffs, *Blaz v. Belfer*, 368 F.3d 501, 503-04 (5th Cir. 2004), is inapposite. The issue in that case was whether the Securities Litigation Standards Act (SLUSA) could be applied retroactively to bar the plaintiff's state-law fraud claims. *Id.* at 503. The parties were not disputing the meaning of provisions of the Sarbanes-Oxley Act, or even Section 18 claims in general. In rendering its opinion on the retroactive effect of SLUSA, the court cited an earlier Section 18 case addressing the SLUSA issue. In describing this case, the *Blaz* court noted in a parenthetical that the Sarbanes-Oxley Act would have extended the statute of repose to five years for that plaintiff had the case been

litigated after the enactment of the Sarbanes-Oxley Act. The court's statement about another case in a parenthetical is dicta at best.

> **(2)    Plaintiffs Were On Inquiry Notice Of Their Section 18 Claim More Than A Year Before This Lawsuit Was Filed.**

Plaintiffs allege in their complaint that the market learned of Hollinger's fraud no later than December 11, 2002: (Cmplt. At ¶ 14)  Indeed, in Count III itself, plaintiffs allege that the truth about defendants' alleged fraud began to "dribble out" in May 2002 "and that the effect of those disclosures was reflected in the stock price by December 11, 2002." (*Id.* at ¶ 502.)  These allegations establish as a matter of law that plaintiffs were on inquiry notice of their Section 18 claim no later than December 11, 2002, which was more than a year before this lawsuit was filed.

To salvage their Section 18 claim, plaintiffs argue that November 17, 2003 is the proper inquiry notice date because that is the date "when Hollinger admitted that all prior representations regarding sale agreements and non-compete payments were false." (Pl. Resp. at 59)  In other words, plaintiffs argue that the clock did not begin to run until *all* of Hollinger's false statements were confirmed for them.  That is not the law.  In this circuit, the statute of limitations begins to run when "the plaintiff learns, or should have learned through the exercise of ordinary diligence in the protection of one's legal rights, enough facts to enable him by such further investigation . . . to sue within a year." *Fujisawa Pharmaceutical Co. v. Kapoor*, 115 F.3d 1332, 1334 (7th Cir. 1997) (internal citations omitted).  Here, plaintiffs had enough facts as of December 11, 2002 to bring a Section 18 claim within a year.

> **B.    Plaintiffs' Section 18 Claim Fails To Allege "Eyeball Reliance" On Any Of KPMG's Audit Reports.**

Plaintiffs do not dispute that, in order to state a Section 18 claim against KPMG, they must allege that they actually read KPMG's audit report and that they were induced to act based

upon a specific misrepresentation in that report. *In re Suprema Specialties Sec. Litig.*, 2004 WL 1907178, at *11 (D. N.J. Aug. 26, 2004); *In re American Continental Corp./Lincoln Savings and Loan Securities Litigation*, 794 F. Supp. 1424, 1438 (D. Ariz. June 16, 1992). In other words, they must allege actual, or "eyeball," reliance on KPMG's audit reports. *See, e.g., In re MDC Holdings Securities Litigation*, 754 F. Supp. 785, 806 (S.D. Cal. 1990). Rather, plaintiffs argue in a footnote that the complaint alleges that they read Hollinger's Forms 10-K and that this allegation satisfies Section 18's "eyeball" reliance requirement. (Pl. Resp. at n.40) Plaintiffs are wrong. At no point in the complaint do plaintiffs allege, as they must, that they read the Forms 10-K in their entirety, or that they read KPMG's audit reports. Furthermore, even if plaintiffs alleged that they read the KPMG audit reports, their claims would still fail because they do not allege that they were induced to act based upon any specific alleged misrepresentations in those audit reports. Basically, plaintiffs are relying on a "fraud on the market"/constructive reliance theory, which by its very nature, cannot satisfy the stringent requirements of Section 18. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1063 (9th Cir. 2000)

### III. COUNT VIII FAILS TO STATE AN AIDING AND ABETTING CLAIM AGAINST KPMG.

#### A. Plaintiffs' Aiding And Abetting Claim Is Preempted By SLUSA.

Plaintiffs are attempting to circumvent SLUSA and Delaware law by labeling Count VIII a "holder" claim (*see* Pl. Resp. at 91, 93), even though the rest of their complaint is premised on the allegation that plaintiffs and the class they purport to represent *purchased* shares at artificially inflated prices during the alleged class period. (*See, e.g.,* Cmplt. ¶¶ 470, 546.) Numerous courts have rejected the same or similar pleading tactics. *See, e.g., Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2005 WL 44434, at *15 (2d Cir. 2005);. *Riley v. Merrill*

*Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1345 (11th Cir. 2002); *Kircher v. Putnam Funds Trust, et. al.*, 2005 WL 757255, at *3 (7th Cir. April 5, 2005); *Atencio v. Smith Barney, CitiGroup, Inc.*, 2005 WL 267556, at *5-6 (S.D.N.Y. February 2, 2005); *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 300 (3rd Cir. 2005). The cases plaintiffs cite in opposition to SLUSA preemption are inapposite. Several of plaintiffs' cases fail to address situations like this one, where plaintiffs were both purchasers and holders during the class period. *See Gordon v. Buntrock*, 2000 WL 556763, at *1, 3 (N.D. Ill. April 28, 2000) (plaintiffs purchased their securities before the misleading statements began and merely held the stock during the class period); *Lalondriz v. USA Networks, Inc.*, 68 F. Supp.2d 285, 285-86 (S.D.N.Y. 1999) (same); *Hines v. ESC Strategic Funds*, 1999 WL 1705503, at *6 (M.D. Tenn. September 17, 1999) (same). Further, at least two cases cited by plaintiffs are no longer good law. Last month, the Second Circuit overruled *Gray v. Seaboard Securities, Inc.*, 241 F. Supp.2d 213 (N.D.N.Y. 2003) and found that plaintiffs' claims were preempted by SLUSA. 2005 WL 551477, at *2 (2d Cir. March 9, 2005) (citing *Dabit v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005)). Two months ago, the Third Circuit noted that *Green v. Ameritrade, Inc.*, 279 F.3d 590 (8th Cir. 2002), has been "undermined" by subsequent Eighth Circuit opinions and by the Supreme Court's decision in *SEC v. Zanford*, 535 U.S. 813 (2002), which the Third Circuit interpreted as saying that SLUSA preemption applies to any alleged fraudulent scheme "coinciding with the purchase or sale of securities." *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 302 (3rd Cir. 2005). Finally, plaintiffs misinterpret *Dacey v. Morgan Stanley Dean Witter & Co.*, 263 F. Supp.2d 706, 711-12 (S.D.N.Y. 2003) by arguing that the court therein refused to dismiss a holder subclass comprised of persons who "purchased and held." (Pl. Resp. at 94) In fact, the court dismissed all plaintiffs who purchased securities during the class

11

period, including those in the "holder" subclass. *Dacey*, 263 F. Supp.2d at 712 ("Defendants' motion to dismiss the Complaint as preempted by SLUSA is granted except to the extent the claims of the Holder Class are asserted on behalf of persons who purchased affected securities prior to the issuance of any of the reports complained of. . .") (emphasis added). This court should likewise reject plaintiffs' elevation of semantics over substance. "[O]therwise, [plaintiffs] who [are] perfectly capable of pleading a claim under Rule 10b-5 could defeat SLUSA preemption . . . merely by alleging what is almost invariably true – that the misrepresentations which caused [them] to purchase the stock also caused [them] to retain it for some period of time." *Dabit*, 2005 WL 44434, at *15.

This Court should also reject plaintiffs' attempt to rely on the so-called "Delaware carve-out" exception to SLUSA preemption. (Pl. Resp. at 92-93) The single case plaintiffs cite in support of their carve-out argument, *Alessi v. Beracha*, 244 F. Supp.2d 354 (D. Del. 2003) is inapposite, and the statutory language of the exception clearly does not encompass this case. The "Delaware carve-out" applies only to cases (i) in which the issuer, in this case Hollinger, itself sold the shares at issue to plaintiffs, or (ii) where the issuer of shares makes statements to its shareholders concerning the shareholders (1) voting their securities, (2) acting in response to a tender offer or exchange, or (3) exercising dissenters' or appraisal rights. *See id.* at 358-59; 15 U.S.C. § 78bb(f)(3). None of these exceptions applies here. Moreover, in *Alessi*, unlike in this case, the alleged misleading on the part of the defendants was related to a tender offer, namely a buyout program. *Id.* at 359. Plaintiffs misinterpret *Alessi* and Section 78bb(f)(3) to exempt all cases involving breaches of fiduciary duties from preemption when, in actuality, the statute merely exempts a few specific types of fiduciary duty allegations, none of which are involved in this case.

### B.    Plaintiffs Lack Standing To Assert Their Derivative Claim.

Plaintiffs cite the proper test for determining whether their aiding and abetting claim is direct or derivative, *see Tooley v. Donaldson*, 845 A.2d 1031, 1039 (Del. 2004),[2] yet they fail to acknowledge that, under the *Tooley* standard, their own claim is derivative.  In *Tooley*, the court held that stockholders seeking to assert a direct claim must demonstrate that they can prevail without showing an injury to the corporation itself.  845 A.2d at 1039.  That is not this case.  Here, plaintiffs' alleged damages are dependent upon showing that the individual defendants took actions that reduced the value of Hollinger's assets.  In essence, plaintiffs' breach of duty claim against the individuals is a "looting" or diversion-of-assets claim.  Thus, plaintiffs allege in Count VIII that KPMG's "aiding and abetting" contributed to the "divestiture of hundreds of millions of dollars of the purchase prices from the sales of Hollinger assets."  (Cmplt. ¶ 554) Plainly, this alleges harm to Hollinger itself, not individualized harm to any particular shareholder.  Accordingly, under *Tooley*, Count VIII is a derivative claim and is subject to the standing requirements for such claims, including making a demand upon the Hollinger directors or alleging that demand would be futile. *See Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993) (internal citations omitted); Fed. R. Civ. P. 23.1.  Plaintiffs do not dispute that they have ignored these standing requirements.

### C.    Plaintiffs Fail To Allege That KPMG Knowingly And Substantially Participated In Any Breach Of Duty.

Plaintiffs contend that, under Delaware law, they do not have to allege that KPMG's participation in the individual defendants' alleged breaches of fiduciary duty was "substantial"

---

[2]    Plaintiffs also cite a string of cases for the proposition that courts recognize individual holder claims. (Pl. Resp. at 85-86)  These cases fail to address the issue at hand:  whether the demand requirement must be satisfied to avoid dismissal of a particular type of holder claim.

and cite one 16-year-old case in support of that position. (Pl. Resp. 88) More recent Delaware law says otherwise. In order to state a claim against KPMG for aiding and abetting a breach of fiduciary duty, plaintiffs must allege three elements: "a) that the fiduciary's conduct was wrongful; b) that the defendant had knowledge that the fiduciary's wrongful conduct was occurring and c) that the ***defendant's conduct gave substantial assistance or encouragement to the fiduciary's wrongful conduct.***" *In re OODC, LLC*, 321 B.R. 128, 144 (Bankr. D. Del. 2005) (emphasis added). Plaintiffs have failed to allege these elements of their aiding and abetting claim against KPMG.

### (1) Plaintiffs Have Not Alleged Facts (As Opposed To Conclusions) Establishing Knowledge.

In their response brief, plaintiffs cite a laundry list of things that KPMG allegedly knew. (Pl. Resp. at 90) This laundry list in no way addresses the deficiency of Count VIII, however. The problem is not with the number of things that plaintiffs allege KPMG knew; rather, the problem is that plaintiffs fail to allege *facts* from which their conclusory allegations of knowledge can be reasonably inferred. The only basis plaintiffs offer for KPMG's knowledge is the fact that "KPMG served as Hollinger's auditor since 1996," "had a close working relationship with defendants," and reviewed Hollinger's financial statements. (*Id.* at 89) From this, plaintiffs conclude that KPMG "must have known" of the individual defendants' alleged fraudulent activities. Such conclusory allegations are insufficient to establish knowledge, regardless of how many times plaintiffs repeat them.[3] *See Oliver v. Boston Univ.*,

---

[3] The two cases cited by plaintiffs to show that the knowledge allegations are sufficient are clearly distinguishable. In *Anglo American Security Fund, L.P. v. S.R. Global International Fund, L.P.*, the court found knowing participation on the part of an accounting firm was adequately alleged because plaintiffs alleged a discrepancy between the company's internal accounting records that the accounting firm reviewed and the company's annual statements that the accounting firm approved. 829 A.2d 143, 157-58 (Del. Ch. 2003). No such discrepancy exists here. *Zirn v. VLI Corp.*, 1989 WL 79963 (Del. Ch. July 17, 1989) addressed whether a
(Continued...)

2000 WL 1091480, at *9 (Del. Ch. July 25, 2000); *Saito v. McCall*, 2004 WL 3029876, at *9 (Del. Ch. December 20, 2004); *In re Frederick's of Hollywood, Inc. Shareholders Litigation*, 1998 WL 398244, at *4 (Del. Ch. July 9, 1998).

> **(2)    Plaintiffs Have Not Alleged Facts Showing Substantial Assistance.**

Plaintiffs have chosen to ignore the deficiencies in their substantial assistance allegations against KPMG. The reason is obvious:  plaintiffs have not alleged any facts suggesting that KPMG substantially assisted the other defendants' alleged breaches of duty.  Instead, plaintiffs make boilerplate and conclusory allegations that KPMG "knew or should have known" about the fraud because it was Hollinger's auditor.  That is not enough.  "[S]ubstantial assistance means something more than the provision of routine professional services."  *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 189 (Minn. 1999).  If courts "were to recognize that such routine services constitute substantial assistance, then it would be the rare accountant indeed who would not be subject to automatic liability because his client happened to be a tortfeasor."  *Id.*

## CONCLUSION

For the reasons stated herein, and in KPMG's opening brief, this Court should dismiss plaintiffs' complaint against KPMG in its entirety.

---

company buying out another company aided and abetted the selling company's breach of fiduciary duty by not disclosing to the selling company's shareholders that the director defendants had a conflict of interest.  In contrast to this case, there was strong evidence that the selling company knew about the conflict of interest, including the fact that during the course of the negotiations the companies changed the structure of the deal such that the conflict of interest was not evident.

DATED:    April 25, 2005

_____

John F. Hartmann, P.C.
Michael Duffy
Valarie Hays
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
Telephone:   (312) 861-2000
Facsimile:   (312) 861-2200

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused a copy of **DEFENDANT KPMG LLP'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** to be served upon the following *via* facsimile and by depositing said copies in the U.S. mail, first-class postage prepaid, on this 25th day of April, 2005.


Carol V. Gilden
Conor R. Crowley
Much Shelist Freed Denenberg Ament
    & Rubenstein, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
   Tel: (312) 521-2000
   Fax: (312) 521-2100

William S. Lerach
Travis E. Downs III
Scott H. Saham
Erin P. McDaniel
Lerach Coughlin Stoia & Robbins LLP
401 B Street, Suite 1700
San Diego, CA 92101
   Tel: (619) 231-1058
   Fax: (619) 231-7423

Marc A. Topaz
Richard Maniskas
Schiffrin & Barroway LLP
3 Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
   Tel: (610) 667-7706
   Fax: (610) 667-7056

Jay W. Eisenhofer
John C. Kairis
Grant & Eisenhofer, P.A.
1201 North Market Street, Suite 2100
Wilmington, DE 19801-2599
   Tel: (302) 622-7000
   Fax: (302) 622-7100

Marvin A. Miller
Matthew E. Van Tine
Jennifer W. Sprengel
Miller Faucher & McCafferty, LLP
30 North LaSalle Street, Suite 3200
Chicago, IL 60602
   Tel: (312) 782-4880
   Fax: (312) 782-4485

Leigh R. Lasky
Norman Rifkind
Lasky & Rifkind, Ltd.
351 West Hubbard, Suite 406
Chicago, IL 60602
   Tel: (312) 634-0057
   Fax: (312) 634-0059

Paula E. Litt
Veronica Gomez
William S. Berndt
Lisa B. Swedenborg
Schopf & Weiss
312 West Randolph, Suite 300
Chicago, IL 60606
  Tel: (312) 701-9300
  Fax: (312) 701-9335

Nathan P. Eimer
Andrew G. Klevorn
Adam B. Deutsch
Vanessa G. Jacobsen
Eimer Stahl Klevorn & Solberg LLP
224 South Michigan Ave., Suite 1100
Chicago, IL 60604
  Tel: (312) 660-7600
  Fax: (312) 692-1718

Robert A. Atkins
Robert N. Kravitz
Daniel J. Kramer
Paul, Weiss, Rifkind, Wharton &
  Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
  Tel: (212) 373-3000
  Fax: (212) 757-3990

Ted S. Helwig
Karl R. Barnickol
Katten Muchin Zavis Rosenman
525 West Monroe Street, Suite 1600
Chicago, IL 60661-3693
  Tel: (312) 902-5200
  Fax: (312) 902-1061

John L. Warden
Laurent S. Wiesel
Robin D. Fessel
David H. Braff
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
  Tel: (212) 558-4000
  Fax: (212) 558-3588

David C. Jacobson
Robert M. Andalman
David B. Singer
Sonnenschein Nath & Rosenthal LLP
8000 Sears Tower
Chicago, IL 60606
  Tel: (312) 876-8000
  Fax: (312) 876-7934

Michael E. Swartz
Irwin J. Sugarman
Schulte Roth & Zabel, LLP
919 Third Avenue
New York, NY 10022
  Tel: (212) 756-2000
  Fax: (212) 593-5955

Brian L. Crowe
Cary E. Donham
Douglas M. Ramsey
Shefsky & Froelich Ltd.
444 North Michigan Avenue, Suite 2500
Chicago, IL 60611
  Tel: (312) 527-4000
  Fax: (312) 527-4011

2

Gordon B. Nash
Curtrice W. Scott
Gardner Carton & Douglas
191 North Wacker Drive, Suite 2700
Chicago, IL 60606-1698
  Tel: (312) 569-1000
  Fax: (312) 569-3000

Ira L. Sorkin
Donald A. Corbett
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10005
  Tel: (212) 732-3200
  Fax: (212) 732-3232

Richard Rothman
Anthony J. Albanese
Greg A. Danilow
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119
  Tel: (212) 310-8000
  Fax: (212) 310-8007

Stephen C. Voris
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, IL 60611
  Tel: (312) 840-7000
  Fax: (312) 840-7900

Joseph J. Duffy
Stetler & Duffy Ltd.
11 South LaSalle Street, Suite 1200
Chicago, IL 60603
  Tel: (312) 338-0200
  Fax: (312) 338-0070

3