## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re HOLLINGER INTERNATIONAL, INC. SECURITIES LITIGATION, | ) ) ) ) | Cons. Civil Action No. 04-C-0834 JUDGE DAVID H. COAR |
| This Document Relates To: ALL ACTIONS. | ) ) ) ) ) | CLASS ACTION |

**SETTLEMENT CLASS REPRESENTATIVES' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR FINAL APPROVAL OF THE
CLASS ACTION SETTLEMENT WITH ALL DEFENDANTS**

GRANT & EISENHOFER P.A.
Jay W. Eisenhofer
John C. Kairis
Chase Manhattan Centre
1201 North Market Street
Wilmington, Delaware 19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100

Attorneys for Teachers' Retirement System of Louisiana,
Cardinal Mid-Cap Value Equity Partners, L.P. and Co-Lead Counsel for the Settlement Class

COHEN MILSTEIN SELLERS & TOLL PLLC
Carol V. Gilden
39 South LaSalle Street, Suite 1100
Chicago, Illinois 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0368

Liaison Counsel for the Settlement Class

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
Darren J. Robbins
Travis E. Downs, III
Ellen Gusikoff Stewart
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

Attorneys for Washington Area Carpenters Pension and
Retirement Fund, Cardinal Mid-Cap Value Equity
Partners, L.P. and Co-Lead Counsel for the Settlement
Class

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................2

        A.      Summary of This And Other Related Actions ........................................2

        B.      The Parties Engaged In Intensive Negotiations And Mediation.............3

        C.      Summary of the Settlement Terms And Plan of Allocation ...................4

        D.      The Publication And Dissemination Of The Notices .............................5

III.    LEGAL ARGUMENT...........................................................................................6

        A.      The Settlement Is More Than "Fair, Reasonable and Adequate"...........6

                1.      The Merits of the Action Compared To The Settlement
                        Amount and Risk of Continued Litigation.................................7

                2.      The Favorable Response of the Settlement Class ......................9

                3.      The Stage of the Proceedings and the Settlement Process
                        Bear The Hallmarks of a Fair and Reasonable Compromise......9

                4.      Experienced Counsel and An Objective Mediator
                        Recommended Approval of the Settlement ...............................10

        B.      The Allocation Is "Fair, Reasonable and Adequate" ...........................10

        C.      The Court Should Grant Final Class Certification................................11

IV.     CONCLUSION...................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cardinal Value Equity Partners, L.P. v. Black, et al.,*
C.A. No. 20406 ........................................................................................................8

*Day v. Check Brokerage Corp.,*
240 F.R.D. 414 (N.D. Ill 2007) .................................................................12, 14

*Day v. Check Brokerage Corp.,*
Civ. No. 05-4912, 2007 U.S. Dist. LEXIS 16271 (N.D. Ill. Mar. 2, 2007) ...........................13

*De La Fuente v. Stokely-VanComp., Inc.,*
713 F.2d 225 (7th Cir. 1983) .......................................................................13

*E.E.O.C. v. Hiram Walker & Sons, Inc.,*
768 F.2d 884 (7th Cir. 1985) .......................................................................10

*In re Hollinger Int'l, Inc. Sec. Litig.,*
No. 04-0834, 2006 U.S. Dist. LEXIS 47173 (N.D. Ill. June 28, 2006) .......................3

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) .................................................................6, 10

*Mangone v. First USA Bank,*
206 F.R.D. 222 (S.D. Ill. 2001) ...................................................................6

*McDaniel v. University Fidelity Corp.,*
No. 04-CV-2157, 2004 U.S. Dist. LEXIS 21320 (N.D. Ill. Oct. 21, 2004) ...................12, 14

*In re Oxford Health Plans, Inc.,*
191 F.R.D. 369 (S.D.N.Y. 2000) ..................................................................13

*Summers v. UAL Corp. ESOP Committee,*
No. 03-C-1537, 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) ...............................11

*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.,*
463 F.3d 646 (7th Cir. 2006) ..................................................................6, 7, 9

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.,*
309 F.3d 978 (7th Cir. 2002) .......................................................................11

*Von Moore v. Simpson,*
No. 96-CV-2971, 1997 U.S. Dist. LEXIS 13791 (N.D. Ill. Sept. 5, 1997) .................12, 13, 14

*Wallace v. Chi. Hous. Auth.,*
224 F.R.D. 420 (N. D. Ill. 2004) ..................................................................12

*White v. NFL,*
    822 F. Supp. 1389 (D. Minn. 1993) ..........................................................................11


**STATUTES**

11 U.S.C. § 362 ..........................................................................................................8


**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23(e) ........................................................................6

Rule 23(a) of the Federal Rules of Civil Procedure....................................................12

Rule 23 of the Federal Rules........................................................................................10

Rule 23 ....................................................................................................................11, 12

Rule 23(a)......................................................................................................................12

Rule 23(a)(1).................................................................................................................12

Rule 23(a)(2).................................................................................................................14

Rule 23(a)(4).................................................................................................................14

Rule 23(a) and Rule 23(b)(3) ..................................................................................11, 12

Rule 23(b) .....................................................................................................................12

Rule 23(b)(3).................................................................................................................14

I.    **INTRODUCTION**

After five years of heavily contested cross-border litigation involving multiple proceedings and courts in the United States and Canada, an intensive coordinated investigation undertaken by teams of attorneys by each of the two Co-Lead Counsel firms and their expert consultants, and protracted negotiations and mediation, the parties reached a global settlement ("Settlement") that resolves this class action ("Action") brought by the Settlement Class Representatives,[1] and three other Canadian class actions pending against Defendants.[2] This Settlement provides for monetary relief of $37.5 million, an extraordinary result given the bankruptcies declared by the corporate defendants during the course of this litigation. The Settlement is the product of vigorous negotiations over a two year period, including ongoing mediation before a retired federal district court judge who recommended that the parties accept the terms that are now embodied in the Stipulation of Settlement ("Stipulation").[3]

---

[1] Lead Plaintiff Teachers' Retirement System of Louisiana ("TRSL") and named plaintiffs Washington Area Carpenters Pension and Retirement Fund ("Washington Carpenters"), Cardinal Mid-Cap Value Equity Partners, L.P. ("Cardinal") and E. Dean Carlson ("Carlson") have been preliminarily appointed Settlement Class Representatives pursuant to the Preliminary Approval Order. Grant & Eisenhofer P.A. ("G&E") and Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin") are the Co-Lead Counsel previously appointed by TRSL and approved by the Court.

[2] The defendants who are parties to this Settlement include Hollinger Int'l, Inc., now known as the Sun-Times Media Group, Inc. ("Hollinger International" or the "Company"), Hollinger Inc., The Ravelston Corporation Limited ("Ravelston Corp."), Ravelston Management Inc. ("RMI") (Ravelston Corp. and RMI are referred to collectively as "Ravelston"), Argus Corporation Ltd. ("Argus"), Lord Conrad M. Black ("Black"), Barbara Amiel Black ("Amiel Black"), Jack A. Boultbee ("Boultbee"), Daniel W. Colson ("Colson"), Richard N. Perle ("Perle"), F. David Radler ("Radler"), Dwayne O. Andreas ("Andreas"), Richard R. Burt ("Burt"), Raymond O. Chambers ("Chambers"), Peter Y. Atkinson ("Atkinson"), Mark S. Kipnis ("Kipnis"), Henry A. Kissinger ("Kissinger"), Marie-Josee Kravis ("Kravis"), Shmuel Meitar ("Meitar"), Robert S. Strauss ("Strauss"), A. Alfred Taubman ("Taubman"), James R. Thompson ("Thompson"), Lord Weidenfeld of Chelsea (Weidenfeld"), Leslie Wexner ("Wexner") and KPMG LLP (Canada). All of these entities and individuals are also defendants in the related Canadian Class Actions (collectively "Defendants").

[3] The Stipulation, dated July 26, 2007, and the Addendum thereto, dated April 14, 2008, are attached to the Declaration of John C. Kairis, dated June 4, 2009 ("Kairis Decl.") as Exhibits A and B. All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation.

Considering, among other things, the risks that Plaintiffs may not ultimately prevail on the merits, and the difficulties, if not impossibilities, of recovering against bankrupt entities and individual defendants who are now in jail and whose assets have been seized by the government, this Settlement is an excellent result for the Class, and should be given final approval as fair, reasonable and adequate.

Pursuant to the Preliminary Approval Order[4] and the Stipulation, the Notice of Pendency And Proposed Settlement of Class Actions, Motion for Attorneys' Fees and Settlement Hearings (the "Notice") and Proof of Claim (collectively, the "Class Notice") were mailed starting on March 20, 2009 to 23,360 Settlement Class members.[5] Only two Class members have opted out of the Settlement and no Class member has objected to the Settlement.[6] The overwhelmingly favorable response from the Class also supports final approval of the Settlement. In sum, the Court should grant final approval of the Settlement.

## II.     FACTUAL BACKGROUND

### A.     Summary of This And Other Related Actions

This Action was initiated on February 2, 2004 against Hollinger International, Hollinger Inc. (collectively "Hollinger"), their affiliates, directors, officers and auditors for violating federal and state securities laws through materially false and misleading statements and omissions to the public about various transactions and financial information concerning

---

[4] This Court preliminarily approved the Settlement on May 16, 2008 (D.I. 491), as revised *nunc pro tunc* by the Revised Preliminary Approval Order dated, December 22, 2008 (D.I. 500) (the "Preliminary Approval Order"). Preliminary approval was also obtained in the Canadian Class Actions as follows: the Saskatoon Court preliminarily approved this settlement by Order dated December 17, 2008; the Ontario Court preliminarily approved this settlement by Order dated January 9, 2009; and the Quebec Court preliminarily approved this settlement by Order dated February 26, 2009. Canadian Counsel will promptly move for final approval of the settlement in the Canadian Courts should the Court grant final approval of the Settlement.

[5] *See* Declaration of Michael Miller ("Miller Decl."), dated May 29, 2009, at ¶¶ 4-5.

[6] *See* Kairis Decl., at ¶¶ 45.

Hollinger, including numerous undisclosed and improper non-compete payments made out of the proceeds of certain Hollinger asset sales, fraudulent payments and misrepresentations about so-called management services fees paid to Ravelston and its affiliates, and undisclosed compensation and other benefits secretly paid to Black, Radler and others. On June 28, 2006, the Court issued its Memorandum Opinion and Order ("2006 Opinion") upholding Plaintiffs' claims asserted under Section 10(b) and Rule 10b-5 and 20(a) of the Securities Exchange Act of 1934.[7] The Court also held that Plaintiffs had no standing to allege misrepresentations made after June 29, 2001, the last date on which any of the named Plaintiffs had purchased securities in Hollinger, but Plaintiffs subsequently filed their Third Consolidated Amended Class Action Complaint ("TAC") adding Cardinal, a later purchaser, as a plaintiff. Defendants subsequently moved to dismiss the TAC for reasons not addressed in the 2006 Opinion.

In addition, certain shareholders initiated three different class actions in Canadian courts against many of the Defendants named in this Action, asserting claims similar to those brought in this Action.[8] Meanwhile, the Securities and Exchange Commission brought its own civil actions against many of the Defendants; the Department of Justice commenced criminal actions against certain Defendants; Ravelston Corp. and Radler pled guilty to criminal charges; and Black, Atkinson, Boultbee and Kipnis were convicted of various crimes.

**B.    The Parties Engaged In Intensive Negotiations And Mediation**

During the course of the litigation, the parties on several occasions attempted to settle this Action, ultimately enlisting the services of the Honorable Nicholas H. Politan ("Politan"), a retired U.S. federal district court judge, who served as a mediator for the parties. The mediation

---

[7] *In re Hollinger Int'l, Inc. Sec. Litig.*, No. 04-0834, 2006 U.S. Dist. LEXIS 47173 (N.D. Ill. June 28, 2006).

[8] Kairis Decl. at ¶ 12.

sessions occurred in August 2004 and December 2006, and the parties engaged in numerous other negotiations in an attempt to reach agreement on the terms of a settlement. As part of this process, the parties submitted detailed mediation statements setting forth their appraisals of the strengths and weaknesses of the claims and prospects for recovery, and after over two years of negotiations, the parties reached agreement on a cross-border settlement of all four class actions. The Settlement addresses legal and jurisdictional issues involving the claims raised in the U.S. and Canadian Class Actions and the coordination of four court systems in the two countries.[9]

C.    **Summary of the Settlement Terms And Plan of Allocation**

The Settlement resolves all claims in this Action and the three related Canadian Class Actions for a total payment of $37.5 million. The "Settlement Class" includes all persons or entities that purchased securities of Hollinger International and/or Hollinger Inc. between and including August 13, 1999 and March 31, 2003.[10]

The proposed Plan of Allocation of Settlement proceeds (the "Plan")[11] is similar to plans of allocation approved in other securities class actions asserting claims under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934, and provides an equitable basis upon which to distribute the Settlement funds among eligible members of the Settlement Class who submit valid Proof of Claim forms. The Plan allocates the Net Settlement Fund based on an estimate of the amounts by which the market prices of Hollinger International and Hollinger Inc. common

---

[9] *See* Kairis Decl. at ¶¶16-18.

[10] Excluded from the proposed Settlement Class are: (i) the Defendants; (ii) the Horizon and Bradford Releasees; (iii) any other defendants named in the Canadian Class Actions (collectively, the persons and entities in subparts (i) through (iii) are the "Excluded Parties"); (iv) any person or entity who was a partner, executive officer, director, controlling person, subsidiary, or affiliate of any Excluded Party during the Settlement Class Period; (v) members of the immediate families of any Excluded Party; (vi) entities in which any of the Excluded Parties has or had a controlling interest during the Settlement Class Period; and (vii) the legal representatives, heirs, predecessors, successors or assigns of any of the Excluded Parties.

[11] The Plan of Allocation is attached as Exhibit H to the Kairis Decl.

stock trading on U.S. and Canadian exchanges were artificially inflated at various points during the Settlement Class Period, and takes into consideration when a Settlement Class member purchased and if they sold their shares. Co-Lead Counsel, in consultation with damages experts, concluded that ninety percent (90%) of the Net Settlement Fund should be allocated to compensate Settlement Class members who purchased and/or sold Hollinger International securities and ten percent (10%) of the Net Settlement Fund should be allocated to compensate Settlement Class members who purchased and/or sold Hollinger, Inc. securities, as that allocation divides the Settlement Fund according to the total amount of damages suffered by investors in each of those companies' stocks.[12]

**D.    The Publication And Dissemination Of The Notices**

Pursuant to the notice plan approved by the Court in the Preliminary Approval Order and set forth in the Stipulation, the Claims Administrator attempted to identify the members of the Settlement Class and their addresses, and starting on March 20, 2009, mailed the Court-approved Notice and Proof of Claim (collectively, "Class Notice") to members of the Settlement Class.[13] The Class Notice described the terms of the Settlement and provided deadlines by which potential Class members had to object to the Settlement, submit their Proof of Claim form or opt out of the Settlement Class. The Claims Administrator mailed 23,360 copies of the Class Notice to potential members of the Settlement Class,[14] published the Court-approved Summary Publication Notice ("Summary Notice") in various publications in the United States and Canada in both English and French, and, while not required by the Preliminary Approval Order, established on March 23, 2009 a dedicated Settlement website at www.hollingerclaims.com to

---

[12] Kairis Decl. at ¶¶33.

[13] Miller Decl. at ¶4.

[14] Miller Decl. at ¶5.

provide information to potential Settlement Class members about the terms of the Settlement, the response deadlines for Settlement Class members, contact information for those who had questions, and the ability to download the Class Notice in both English and French and electronically file Proof of Claim forms.[15]  To date, no objections have been received from any United States or Canadian member of the Settlement Class and only two Canadian Class members have opted out of the Settlement.[16]

## III.   LEGAL ARGUMENT

### A.   The Settlement Is More Than "Fair, Reasonable and Adequate"

The Seventh Circuit and district courts in this Circuit recognize "an overriding public interest in favor of settlement" of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation"); *Mangone v. First USA Bank*, 206 F.R.D. 222, 224 (S.D. Ill. 2001).  Federal Rule of Civil Procedure 23(e) requires that a class action settlement be "fair, reasonable and adequate" in order to merit final approval.  In deciding whether to finally approve a class action settlement, the Seventh Circuit has identified a non-exhaustive list of factors to evaluate the fairness of a settlement, including: (1) the strength of plaintiffs' case compared to the amount of defendants' settlement offer; (2) the likely complexity, length and expense of the litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement. *Isby*, 75 F.3d at 1199. *See also Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (noting factors).

---

[15] *See* Kairis Decl. at ¶¶43-44; Miller Decl. at ¶¶6-7.

[16] *See* Kairis Decl. at ¶¶45; Miller Decl. at ¶10.

Application of these factors shows that the Settlement is an excellent result for the Settlement Class, as it provides for substantial monetary relief to the Class of $37.5 million that will be fairly allocated among purchasers of Hollinger stock during the Settlement Class Period. In particular, the Settlement represents an exceptional benefit compared to the risk that further protracted and contested litigation might lead to no, or a smaller, recovery against Defendants.

**1.   The Merits of the Action Compared To The Settlement Amount and Risk of Continued Litigation**

In determining the strength of a plaintiff's action, a district court must weigh the merits of the action against the amount offered in settlement by "'quantify[ing] the net expected value of continued litigation to the class.'" *Synfuel,* 463 F.3d at 653 (quoting *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 284-85 (7th Cir. 2002)). Here, the risk of an adverse ruling on the merits, along with the difficulties, if not impossibility, in prevailing against bankrupt defendants, demonstrate the significant value of the Settlement to the Class.

As calculated by Co-Lead Counsel with the assistance of their experts, the maximum investor losses in this Action, assuming full liability on all claims for the entirety of the Settlement Class Period, are estimated at $226.6 million.[17] The $37.5 million settlement therefore represents a recovery of nearly 17% of the Class's losses before fees and expenses and approximately 13.75% after fees and expenses. According to a recent NERA study, in cases involving investor losses of about $200 million, the average recovery is <u>only 2.7%</u> of investor

---

[17] Kairis Decl. at ¶32. This figure was obtained by combining the estimated damages for purchasers of Hollinger International and Hollinger Inc. stock during the Settlement Class Period using standard trading models, and considering the amount of the drops in the prices of the companies' stocks caused by the fraud, the number of shares affected and the volume of the trading in the stock. *Id.* at ¶32.

losses.[18]  Thus, the value of this Settlement is well above the average comparable securities class action settlement.

Among the many risks of continued litigation present here, there is a risk that the Defendants will prevail on pending motions to dismiss or for summary judgment or at trial.  In particular, there is significant risk of a ruling that Plaintiffs have failed to adequately plead loss causation, an issue that received substantial attention in the Defendants' pending motions to dismiss.  Thus, there is a risk that recovery in this case could be zero.

It is not terribly difficult to assess the net expected value of the continued litigation to the Class because even if Plaintiffs ultimately prevail on the merits of their claims, there is an appreciable risk that recovery in this matter would still be zero because the Company and other Defendants have used, and are currently using, the only available proceeds from insurance policies to pay their defense costs in this and the criminal proceedings, and the first, second and third layers of insurance were exhausted by the $50 million settlement reached in the Hollinger derivative action brought in the Delaware Court of Chancery styled as *Cardinal Value Equity Partners, L.P. v. Black, et al.*, C.A. No. 20406.  Moreover, Hollinger International, Hollinger Inc. and Ravelston Corp. have each filed for bankruptcy protection.  While the bankruptcy trustees have represented that these entities will honor the terms of the Settlement despite the bankruptcy filings, if final approval of the Settlement is not granted, the automatic stay in bankruptcy under 11 U.S.C. § 362 would act to indefinitely stay Plaintiffs' claims this action.  Recovery against the individual defendants is also suspect as several of them have been indicted and pled or found

---

[18] *See* Dr. Stephanie Plancich and Svetlana Starykh, *2008 Trends in Securities Class Actions: Annual Filings Are at the Highest Level in Six Years, Driven by the Credit Crisis, While Median Settlement Values Stay Steady* (Dec. 18, 2008), *available at* http://www.nera.com/Publication.asp?p_ID=3674 (last visited May 21, 2009).

guilty of criminal misconduct, and the government seized some assets of the wealthiest individual defendant, Lord Conrad Black, who is currently serving his prison sentence. [19]

Finally, any victory on behalf of the Class at trial would also likely be appealed by the Defendants, thereby creating further waste of resources, uncertainty and delay, and given the corporate defendants' bankruptcies, the probability of the Class recovering on a judgment in an amount equal to or greater than the Settlement is highly unlikely, if not impossible. Thus, the Settlement is more than fair, reasonable and adequate under the standards articulated by the Seventh Circuit in *Synfuel,* 463 F.3d at 663.

### 2.     The Favorable Response of the Settlement Class

Pursuant to Preliminary Approval Order, members of the Settlement Class had until April 29, 2009 to opt out of the Settlement and until May 12, 2009 to object to the Settlement.[20] No Settlement Class member has objected to the Settlement, certification of the Settlement Class, appointment of the Settlement Class Representatives or their choice of Counsel, or to the fees requested by Counsel and the Claims Administrator pursuant to the Settlement. Only two Canadian members of the Class opted out of the Settlement Class and both owned very minor shareholdings in Hollinger.[21]

### 3.     The Stage of the Proceedings and the Settlement Process Bear The Hallmarks of a Fair and Reasonable Compromise

The Settlement was reached after Co-Lead Counsel obtained and reviewed the report of Hollinger's Special Litigation Committee on the alleged fraud at Hollinger and thousands of pages of internal Hollinger documents and trial transcripts from a related derivative action in Delaware Chancery Court, and after the parties twice briefed several motions to dismiss

---

[19] Kairis Decl. at ¶¶ 19-21.

[20] *See* Ex. C of Kairis Decl., Preliminary Approval Order at ¶20; Ex. I of Kairis Decl., Class Notice.

Plaintiffs' claims.[22] The Settlement also followed extensive, arm's-length negotiations between informed counsel that spanned more than two years, including mediation before the Honorable Nicholas Politan, a former district court judge, who helped broker the agreement. The parties and their counsel were thus quite familiar with the strengths and weaknesses of their respective claims and defenses when they agreed to the terms of Settlement.

### 4.   Experienced Counsel and An Objective Mediator Recommended Approval of the Settlement

A district court may rely on the opinion of class counsel as to the fairness, reasonableness and adequacy of the Settlement. *See Isby*, 75 F.3d at 1200. Co-Lead Counsel, highly experienced class action attorneys that specialize in securities law and class action prosecution, as well as the institutional investor Lead Plaintiff and named plaintiffs, all believe that the Settlement is fair, reasonable and adequate, particularly in light of the risks of a lower or no recovery in this action.[23] Counsel for the representative plaintiffs in the Canadian Class Actions have the same opinion. The Honorable Nicholas Politan, who served as the mediator in the ongoing mediation between the parties for two years, also approved of the terms of the Settlement and recommended that the parties approve the Settlement.[24]

### B.   The Allocation Is "Fair, Reasonable and Adequate"

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedures is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable and adequate. *See E.E.O.C. v.*

---

[21] Miller Decl. at ¶10, Exhibits A-1 and A-2.

[22] Kairis Decl. at ¶¶5-25.

[23] Kairis Decl. at ¶¶27-28; *see* Declaration of Travis E. Downs III, dated May 28, 2009, at ¶¶3, 7 ("Downs Decl."); Declaration of Roy A. Mongrue, Jr., dated June 2, 2009, at ¶14; Declaration of Carol V. Gilden, dated May 28, 2009, at ¶9; Declaration of David Kessler, dated May 28, 2009, at ¶¶2, 8; Declaration of Bruce McNew, dated May 27, 2009, at ¶7; Declaration of John T. DeCarlo, dated May 27, 2009, at ¶8.

*Hiram Walker & Sons, Inc.*, 768 F.2d 884, 891 (7th Cir. 1985) (considering reasonableness of settlement disbursement). An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993).

As explained above, the Plan (attached as Exhibit H to the Kairis Declaration) was developed by Co-Lead Counsel in consultation with damages experts, and provides a fair allocation of Settlement proceeds based on the estimated inflation in shares of Hollinger International and Hollinger Inc. as a result of the alleged fraud and the total damages suffered by investors in those companies during the Class Period, and fairly distributes the Settlement Fund based on when Class members bought and sold their Hollinger International and Hollinger Inc. shares. Thus, the Plan should be approved in its entirety. *See Summers v. UAL Corp. ESOP Committee*, No. 03-C-1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (approving plan of allocation providing for distribution of "settlement funds that remain after costs and attorneys' fees are deducted. . . to the class members on a pro rata basis").

### C.   The Court Should Grant Final Class Certification

The Court's Preliminary Approval Order conditionally certified a settlement class pursuant to Rule 23, finding that the class satisfied all of the requirements of Rule 23(a) and Rule 23(b)(3). [25] The Court appointed Lead Plaintiff and the named plaintiffs as Settlement Class Representatives. *See* Preliminary Approval Order, dated 12/22/2008, D.I. No. 500, at ¶ 4.

The Seventh Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978 (7th Cir. 2002) (affirming certification of class for purposes of settlement only).

---

[24] Kairis Decl. at ¶18.

District courts within the Seventh Circuit interpret Rule 23 liberally for purposes of settlement. *See Wallace v. Chi. Hous. Auth.*, 224 F.R.D. 420, 423 (N. D. Ill. 2004) ("The Court has broad discretion to determine whether a proposed class meets the Rule 23 certification requirements. [citation omitted]. In making this determination, the Court recognizes that Rule 23(a) should be liberally construed to support its policy of favoring the maintenance of class actions."). *See also Von Moore v. Simpson*, No. 96-CV-2971, 1997 U.S. Dist. LEXIS 13791 (N.D. Ill. Sept. 5, 1997) ("The standard of proof which is required in support of certification is rather liberal and subject to the discretion of the district court.").

"A plaintiff seeking class certification must demonstrate that the proposed class meets all the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and at least one of the Rule 23(b) requirements." *Day v. Check Brokerage Corp.*, 240 F.R.D. 414 (N.D. Ill 2007). "A class may be certified only if '(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Id.*, *quoting* Fed. R. Civ. P. 23(a). Class certification is appropriate here because this action easily meets the requirements of Rule 23(a) and Rule 23(b)(3).

The Class is comprised of the purchasers of approximately 74.5 million shares of Hollinger Class A common stock[26] and 32 million shares of Hollinger Inc. common stock. Thus, the Class is sufficiently numerous to satisfy Rule 23(a)(1). *See, e.g., McDaniel v. University Fidelity Corp.*, No. 04-CV-2157, 2004 U.S. Dist. LEXIS 21320, at *8 (N.D. Ill. Oct. 21, 2004)

---

[25] Ex. C of Kairis Decl., Preliminary Approval Order at ¶¶3-4.

granting preliminary approval and finding numerosity requirement met where the potential class consisted of approximately 2,800 members). Additionally, there are questions of law and fact common to the Class, the resolution of which would advance the litigation, including whether Defendants violated Section 10(b) of the Exchange Act, whether Defendants acted with scienter, whether certain Defendants "controlled" Hollinger International for purposes of Section 20(a) of the Exchange Act, the extent to which Class members have sustained damages and the proper measure of damages. *See Moore v.* Simpson, Civ. No. 96-2971, 1997 U.S. Dist. LEXIS 13791, at **17-18 (N.D. Ill. Sept. 5, 1997) (commonality element satisfied where there "are common questions of fiduciary obligations that are owed to the class as a whole" and finding that commonality requirement is so closely related to predominance requirement that where one is satisfied so too is the other); *Day v. Check Brokerage Corp.*, Civ. No. 05-4912, 2007 U.S. Dist. LEXIS 16271, at *14 (N.D. Ill. Mar. 2, 2007) (commonality element satisfied where main issue was whether letter sent to class members violated law); *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("[w]here the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.").

Moreover, the class representatives' claims are typical of those of the class, as the injuries to Lead Plaintiff, the named plaintiffs and the other members of the Class are unquestionably attributable to the same allegedly unlawful course of conduct by Hollinger International and others, and liability for this conduct is predicated on the same legal theories. *De La Fuente v. Stokely-VanComp., Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (when the classes of named and

---

[26] There are outstanding approximately 74.5 million shares of Hollinger Class A common stock and 15 million shares of Hollinger Class B common stock. The Class B common stock was held exclusively by Hollinger Inc. which is excluded from the Class and should not be considered for purposes of numerosity.

unnamed plaintiffs "arise[] from the same event or practice or course of conduct...[and] are based on the same legal theory, ...[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members.")

Rule 23(a)(4) is satisfied because "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  As Lead Plaintiff, the named plaintiffs and the Class share the common goal of maximizing recovery, there is no conflict among them.  Moreover, Co-Lead Counsel have extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States, and are qualified and able to conduct this litigation, as this Court recognized when appointing them Co-Lead Counsel.  Therefore, Rule 23(a)(4) is satisfied.

The prerequisites for class certification under Rule 23(b)(3) are also satisfied, as numerous common issues relating to the Defendants' liability – including but not limited to their course of conduct, scienter, control of Hollinger International, and their ability to prove certain affirmative defenses – predominate over any individualized issues. *See Day*, 240 F.R.D. at **12 (finding commonality requirement satisfied); *see also Von Moore*, 1997 U.S. Dist. LEXIS 13791, at *17 ("The commonality requirement of Rule 23(a)(2) and predominance requirement of Rule 23(b)(3) are closely related and a finding of one will generally satisfy the other"). Additionally, this consolidated class action is clearly "superior to other available methods for the fair and efficient adjudication" of the claims of the vast number of purchasers of Hollinger International and Hollinger Inc. common stock. *See McDaniel*, 2004 U.S. Dist. LEXIS 21320, at *8 (finding, *inter alia*, that "[a] class action would be the most efficient manner to resolve the class members' claims").

The overall fairness and adequacy of the Settlement and its favorable reception by the Class, as summarized above, confirm that the Court should make its Preliminary Approval Order final, and grant final certification to the Class and confirm the appointment of the Class Representatives and Co-Lead Counsel.

## IV.    CONCLUSION

For these reasons, the Settlement Class Representatives respectfully request that the Court: (1) finally approve the proposed Settlement and Plan of Allocation and (2) finally certify the Settlement Class.

Dated: June 4, 2009                          Respectfully submitted,

                                             Jay W. Eisenhofer
                                             John C. Kairis
                                             Grant & Eisenhofer P.A.
                                             Chase Manhattan Centre
                                             1201 North Market Street
                                             Wilmington, Delaware 19801
                                             Telephone: (302) 622-7000
                                             Facsimile: (302) 622-7100
                                             Attorneys for Lead Plaintiff Teachers' Retirement
                                             System of Louisiana, Class Representative Cardinal
                                             Mid-Cap Value Equity Partners, L.P. and Co-Lead
                                             Counsel for the Settlement Class

Carol V. Gilden                              Darren J. Robbins
Cohen Milstein Sellers & Toll P.L.L.C.       Travis E. Downs, III
39 South LaSalle Street, Suite 1100          Ellen Gusikoff Stewart
Chicago, Illinois 60603                      Coughlin Stoia Geller Rudman & Robbins LLP
Telephone: (312) 357-0370                    655 West Broadway, Suite 1900
Facsimile: (312) 357-0368                    San Diego, CA 92101
                                             Telephone: (619) 231-1058
Liaison Counsel for the Settlement Class     Facsimile: (619) 231-7423
                                             Attorneys for Plaintiff Washington Area Carpenters
                                             Pension and Retirement Fund, Class Representative
                                             Cardinal Mid-Cap Value Equity Partners, L.P. and
                                             Co-Lead Counsel for the Settlement Class