**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re HOLLINGER INTERNATIONAL, INC. SECURITIES LITIGATION, | ) ) ) ) | Cons. Civil Action No. 04-C-0834 JUDGE DAVID H. COAR |
| This Document Relates To: ALL ACTIONS. | ) ) ) ) ) | CLASS ACTION |

**CO-LEAD COUNSEL'S MEMORANDUM
OF LAW IN SUPPORT OF AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF EXPENSES**

GRANT & EISENHOFER P.A.
Jay W. Eisenhofer
John C. Kairis
Chase Manhattan Centre
1201 North Market Street
Wilmington, Delaware 19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100

Attorneys for Teachers' Retirement System of Louisiana, Cardinal Mid-Cap Value Equity Partners, L.P. and Co-Lead Counsel for the Settlement Class

COHEN MILSTEIN SELLERS & TOLL PLLC
Carol V. Gilden
39 South LaSalle Street, Suite 1100
Chicago, Illinois 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0368
Liaison Counsel for the Settlement Class

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
Darren J. Robbins
Travis E. Downs, III
Ellen Gusikoff Stewart
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

Attorneys for Washington Area Carpenters Pension and Retirement Fund, Cardinal Mid-Cap Value Equity Partners, L.P. and Co-Lead Counsel for the Settlement Class

## TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................................1

II.  FACTUAL BACKGROUND ..................................................................................3

III.  LEGAL ARGUMENT..............................................................................................3

    A.  A Reasonable Percentage Of The Fund Recovered Is The Appropriate Approach To Awarding Attorneys' Fees In Common Fund Cases ....................................................................................................3

    B.  Various Factors Support An Award Of The Requested Fees ...................6

        1.  The Court Should Strongly Consider Lead Plaintiff's Decision Regarding Attorney Compensation ...............................6

        2.  The Value Of The Benefit Rendered To Shareholders.................7

        3.  The 22.5% Fee Request Is Fair As A Percentage Of The Fund .................................................................................................8

        4.  The Contingent Nature Of The Case And The Risks And Uncertainties Of No Recovery.................................................10

        5.  The Complexity Of The Case And The Quality Of The Representation........................................................................10

    C.  The Fee Request Is Fair Under The Lodestar/Multiplier Analysis.......11

    D.  The Reaction Of The Class Supports The Requested Fee Award .........13

    E.  The Court Should Award Co-Lead Counsel Its Reasonable Expenses ..................................................................................................13

    F.  The Court Should Award The Claims Administrator Its Fees................14

IV.  CONCLUSION.......................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

CASES

*In re Abbott Lab. Sec. Litig.,*
    No. 92-3869, 1995 WL 792083 (N.D. Ill. July 3, 1995) ........................................................9

*Arenson v. Board of Trade,*
    372 F. Supp. 1349 (N.D. Ill. 1974) .................................................................................11

*Berger v. Xerox Corp. Ret. Income Guarantee Plans,*
    No. 00-584-DRH, 2004 WL 287902 (S.D. Ill. Jan. 22, 2004)................................................9

*Blum v. Stenson,*
    465 U.S. 886 (1984)................................................................................................................4

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980)................................................................................................................4

*Burda v. M. Ecker Co.,*
    2 F.3d 769 (7th Cir. 1993) ..................................................................................................13

*In re Cenco, Inc. Sec. Litig.,*
    519 F. Supp. 322 (N.D. Ill. 1981) ......................................................................................11

*Central R.R. & Banking Co. v. Pettus,*
    113 U.S. 116 (1885)................................................................................................................4

*In re Comdisco Sec. Litig.,*
    150 F. Supp. 2d 943 (N.D. Ill. 2001) ...................................................................................9

*In re Continental Illinois Sec. Litig.,*
    962 F.2d 566 (7th Cir. 1992) .....................................................................................8, 9, 11, 12

*Florin v. Nationsbank of Ga., N.A.,*
    60 F.3d 1245 (7th Cir. 1995) ...............................................................................................4

*Florin v. Nationsbank of Ga., N.A.,*
    34 F.3d 560 (7th Cir. 1994) .............................................................................................4, 11

*Gary v. Sheahan,*
    No. 96-C-7294, 2001 WL 1543514 (N.D. Ill. Nov. 30, 2001) ............................................11

*Harman v. Lyphomed, Inc.,*
    945 F.2d 969 (7th Cir. 1991) .....................................................................................8, 11, 12

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)...........................................................................................................7

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000).....................................................................................10

*In re Lucent Tech. Sec. Litig.,*
    327 F. Supp. 2d 426 (D.N.J. 2004) ................................................................................12

*Kirshoff v. Flynn,*
    786 F.2d 320 (7th Cir. 1986) ...........................................................................................4

*Maley v. Del. Global Techs Corp.,*
    186 F. Supp. 2d 3585 (S.D.N.Y. 2002)..........................................................................10

*Meyenburg v. Exxon Mobil Corp.,*
    No. 05-cv-15-DGW, 2006 WL 2191422 (S.D. Ill. July 31, 2006) .............................5, 8

*In re Mexico Money Transfer Litig.,*
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ............................................................................9

*Skelton v. General Motors Corp.,*
    860 F.2d 250 (7th Cir. 1988) .........................................................................................11

*Sutton v. Bernard,*
    504 F.3d 688 (7th Cir. 2007) ...........................................................................................6

*In re Synthroid Marketing Litig.,*
    325 F.3d 974 (7th Cir. 2003) ........................................................................................4, 9

*In re Synthroid Marketing Litig.,*
    264 F.3d 712 (7th Cir. 2001) ........................................................................................6, 9

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.,*
    No. 02-CV-1109-DRH, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004) ..........................6, 8

*In re Telectronics Pacing Sys.,*
    186 F.R.D. 459 (S.D. Ohio 1999) ...................................................................................5

*Tolentino v. Friedman,*
    46 F.3d 645 (7th Cir. 1995) ...........................................................................................11

*In re WorldCom, Inc. Sec. Litig.,*
    388 F. Supp. 2d 319 (S.D.N.Y. 2005).............................................................................7

**STATUTES**

15 U.S.C. § 78u-4(a)(6) ...................................................................................................................5

## I.    INTRODUCTION

As set forth in the Settlement Class Representatives' Memorandum of Law In Support of Motion For Final Approval of The Class Action Settlement with All Defendants ("Settlement Approval Brief"), after five years of heavily contested cross-border litigation involving multiple proceedings and courts in the United States and Canada, an intensive coordinated investigation undertaken by teams of attorneys by each of the two Co-Lead Counsel firms and their expert consultants, and protracted negotiations and mediation, the parties reached a global settlement ("Settlement") that resolves this class action ("Action") brought by the Settlement Class Representatives,[1] and three other Canadian class actions pending against Defendants.[2] Co-Lead Counsel have obtained an all cash Settlement of $37.5 million, an extraordinary amount given the bankruptcies declared by the corporate defendants during the course of this litigation.[3]

---

[1] Lead Plaintiff Teachers' Retirement System of Louisiana ("TRSL") and named plaintiffs Washington Area Carpenters Pension and Retirement Fund ("Washington Carpenters"), Cardinal Mid-Cap Value Equity Partners, L.P. ("Cardinal") and E. Dean Carlson ("Carlson") have been preliminarily appointed Settlement Class Representatives pursuant to the Preliminary Approval Order. Grant & Eisenhofer P.A. ("G&E") and Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin") are the Co-Lead Counsel previously appointed by TRSL and approved by the Court.

[2] The defendants who are parties to this settlement include Hollinger International, Inc., now known as the Sun-Times Media Group, Inc. ("Hollinger International" or the "Company"), Hollinger Inc., The Ravelston Corporation Limited ("Ravelston Corp."), Ravelston Management Inc. ("RMI") (Ravelston Corp. and RMI are referred to collectively as "Ravelston"), Argus Corporation Ltd. ("Argus"), Lord Conrad M. Black ("Lord Black"), Barbara Amiel Black ("Amiel Black"), Jack A. Boultbee ("Boultbee"), Daniel W. Colson ("Colson"), Richard N. Perle ("Perle"), F. David Radler ("Radler"), Dwayne O. Andreas ("Andreas"), Richard R. Burt ("Burt"), Raymond O. Chambers ("Chambers"), Peter Y. Atkinson ("Atkinson"), Mark S. Kipnis ("Kipnis"), Henry A. Kissinger ("Kissinger"), Marie-Josee Kravis ("Kravis"), Shmuel Meitar ("Meitar"), Robert S. Strauss ("Strauss"), A. Alfred Taubman ("Taubman"), James R. Thompson ("Thompson"), Lord Weidenfeld of Chelsea (Weidenfeld"), Leslie Wexner ("Wexner") and KPMG LLP. All of these entities and individuals are also defendants in the related Canadian Class Actions (collectively "Defendants").

[3] The terms of the Settlement are set forth in the Stipulation of Settlement, dated July 26, 2007, and the Addendum thereto, dated April 14, 2008 (collectively "Stipulation"), which are attached to the Declaration of John C. Kairis, dated June 4, 2009 ("Kairis Decl.") as Exhibits A and B. All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation. Co-Lead Counsel include Grant & Eisenhofer P.A. ("G&E") and Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin").

For their efforts, Co-Lead Counsel seek an award of 22.5% of the Settlement Fund ($8,437,500), plus $429,187.48 in expenses (plus interest on the award at the same rate and for the same period as that earned on the Settlement Fund). [4]  As set forth below, the amount requested is fair and reasonable and should be approved.

First, Co-Lead Counsel took this case on a contingency basis, and their efforts were not without considerable risk and expense.  As set forth below and in the Declaration of John C. Kairis, dated June 4, 2009, filed simultaneously herewith ("Kairis Decl."), this case presented specific factual problems with respect to loss causation, standing and damages.  Additionally, the bankruptcies of the corporate defendants during the litigation presented an additional risk that there would be no "deep pocket" to fund a recovery at all.  The government's seizure of the assets of Lord Black, and the imprisonment of several individual defendants, presented additional obstacles to the prosecution of this case and to obtaining any recovery for investors.

Second, the percentage requested is the same rate set at the outset of the litigation by the Lead Plaintiff.  An arms' length negotiated fee agreement with a major institutional investor who suffered substantial losses and has been appointed by the Court to oversee and direct the litigation is precisely the scenario envisioned by Congress in enacting the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Those negotiations and the resulting fee agreement should be given due difference.

Third, the 22.5% fee request is less than the prevailing contingency rate in the market.  All of those factors show that the requested fee is fair and reasonable as a percentage of the common fund.

---

[4] The counsel for the plaintiff class in the three related Canadian Class Actions are permitted under the Stipulation to seek up to $758,000 in total fees and expenses from the Canadian Courts.

The requested fee is also fair under the lodestar/multiplier method. Here, the total requested fee amounts to a modest multiplier of 2.3, which is in line with multipliers used in other cases. Moreover, given the significant risks of no recovery confronting Co-Lead Counsel in this Action, an award of a risk multiplier is particularly appropriate.

Finally, the reaction of the Settlement Class members to the requested fee award should be considered. The Settlement Class has been notified of the Settlement and fee application through individual mailings and national publications in the United States and Canada, and no Class Member has objected to the fee or expense request.

For all of these reasons, the requested attorneys' fees and expenses for which reimbursement are sought are fair and reasonable under applicable legal standards and in light of the substantial risk of no recovery, the result achieved and the efforts expended. The fees and expenses should be awarded by the Court in the amount requested.

## II.    FACTUAL BACKGROUND

The Court is respectfully referred to Plaintiffs' Settlement Approval Brief and the Kairis Decl. for a history of the litigation, the claims asserted, the negotiations and substance of the Settlement, and the substantial risks and uncertainties specific to this Action.

## III.    LEGAL ARGUMENT

### A.    A Reasonable Percentage Of The Fund Recovered Is The Appropriate Approach To Awarding Attorneys' Fees In Common Fund Cases

For their efforts on behalf of the Settlement Class, US Counsel are applying for compensation from the Settlement Fund on a percentage basis. The percentage approach is the appropriate method of fee determination because it aligns the lawyers' interest in being paid a fair fee with the interest of the Class in achieving the maximum recovery for the Class in the shortest amount of time required under the circumstances, which is what occurred here. Fee

awards representing a percentage of the fund recovered have become an accepted method for awarding attorneys' fees in common fund cases in this Circuit and throughout the United States.

It has long been recognized that an attorney who recovers a common fund for the benefit of a class is entitled to recover attorneys' fees and expenses payable from the fund. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478-79 (1980) (approving award of attorneys' fees as proper application of common fund doctrine). This rule, known as the common fund doctrine, is firmly rooted in American case law. *See, e.g., Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885). Indeed, in *Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984), the Supreme Court stated that the percentage method of computing fees was the proper approach in the "common fund" context where, as here, the fees are paid out of (not in addition to) the fund recovered:

> Unlike the calculation of attorneys' fees under the "common fund doctrine," where a reasonable fee is based on a percentage of the fund bestowed on the Class, a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation.

In this Circuit, the district court has discretion to award attorneys' fees in common fund cases based on "the lodestar method, the percentage of recovery method, or some combination of the two." *Florin v. Nationsbank of Ga., N.A.,* 60 F.3d 1245, 1247 n.2 (7th Cir. 1995). However, as held in *Florin v. Nationsbank of Ga., N.A.,* 34 F.3d 560, 566 (7th Cir. 1994), "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *See also In re Synthroid Marketing Litig.,* 325 F.3d 974, 975 (7th Cir. 2003) (after reviewing district court decision capping attorneys' fees at 10% of any "mega fund" recovery of over $75 million, court upheld award of 22% of class' recovery, plus litigation costs and expenses).

4

Moreover, the percentage method provides plaintiffs' counsel with a strong incentive to obtain the maximum possible recovery in the shortest amount of time necessary under the circumstances. As explained in *Kirshoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986):

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent the client gains. . . . The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours. Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants. . . . At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

Third, the percentage method decreases the burden imposed on the court by the "lodestar" method, encourages early settlements and more accurately reflects appropriate compensation for the result achieved. *See In re Telectronics Pacing Sys.*, 186 F.R.D. 459, 483 (S.D. Ohio 1999), *rev'd on other grds.*, 221 F.3d 870 (6th Cir. 2000); *Meyenburg v. Exxon Mobil Corp.*, No. 05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("[T]he skill and efficiency with which this case has been handled and the relief accorded members of the class calls for the use of a percentage of the fund approach.").[5]

Finally, the PSLRA also provides support for the percentage method, stating that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6). As shown below, various factors support the granting of Co-Lead Counsel's fee application as a percentage of the common fund created by the Settlement in this case.

---

[5] Professor Coffee argues that a percentage of the gross recovery is the *only* reasonable method of awarding fees in common fund cases. *See* John C. Coffee, Jr., "Understanding the Plaintiffs Attorney – The Implications of Economic Theory for Private Enforcement of the Law Through Class and Derivative Actions," 86 Colum. L. Rev. 669, 724-25 (1984).

**B.**   **Various Factors Support An Award Of The Requested Fees**

    **1.**   **The Court Should Strongly Consider Lead Plaintiff's Decision Regarding Attorney Compensation**

The percentage requested here was not conjured up by attorneys – it was established by the Lead Plaintiff at the beginning of this case. As explained in the declaration of Roy Mongrue, General Counsel of Lead Plaintiff TRSL, the fee agreement was negotiated at arms' length prior to the appointment of Co-Lead Counsel.[6]  Thus, Co-Lead Counsel agreed to abide by this fee structure no matter how long the case took, no matter how it turned out and no matter how uneconomical or risky it might become.  This decision by Lead Plaintiff is entitled to deference. As the blue ribbon task force impaneled by the Third Circuit concluded on this precise point:

> The Task Force believes, however, that the deference to the empowered plaintiff's choice of *counsel* in PSLRA cases should extend to the *ex post* review of the fee agreement in those cases.  The PSLRA establishes a model of client control that extends not only to appointment of counsel but also to monitoring of counsel and negotiation of the fee.  The Task Force concludes, therefore, that strict scrutiny of the fee agreement is inconsistent with the client-driven litigation model established in the PSLRA.  This means that a court should presume that the fee is reasonable when it is the result of an agreement between the "most adequate" plaintiff and chosen counsel.

Third Circuit Task Force Report, *Selection of Class Counsel*, 208 F.R.D. 340, 452 (Jan. 15, 2002) (emphasis in original).

The Seventh Circuit has the same view.  *See Sutton v. Bernard*, 504 F.3d 688, 692 & n.2 (7th Cir. 2007) (explaining that where "attorneys' fees had not been determined up front, the court must consider "the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed").  In fact, in *In re Synthroid Marketing Litig.*, 264 F.3d 712, 718-19 (7th Cir. 2001), Judge Easterbrook held that the earlier a fee arrangement is concluded between lead plaintiff and lead counsel, the more

---

[6] *See* Declaration of Roy A. Mongrue, Jr., dated June 2, 2009, at ¶¶7-10 ("Mongrue Decl.").

deference the court should pay to that fee agreement because fee agreements set early in the litigation are more likely to be product of market forces (i.e., competition among counsel proposing to represent the class). *See also Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, No. 02-CV-1109-DRH, 2004 WL 768658, at *7 (S.D. Ill. Mar. 19, 2004) (granting fee request after considering "the actual agreements negotiated by the named Plaintiffs and the Class Counsel prior to the commencement of the litigation"). Thus, the fact that the fee agreement in this case was negotiated at the outset of the litigation provides additional reason to follow it.

The deference to the Lead Plaintiff's agreement with its counsel also comports with the goal of Congress in enacting the PSLRA to encourage institutional investors to play an active role in prosecuting cases under the securities laws. Congress believed that increasing the role of institutional investors would "ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at 34 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731, 1995 WL 709276). Sophisticated investors such as TRSL with large financial stakes in litigation have a particular interest in ensuring that the fees upon final resolution of the case are reasonable. *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 356 (S.D.N.Y. 2005) ("The establishment of criteria for the appointment of a lead plaintiff capable of exercising a significant supervisory role in the litigation, including management of the fees and costs, was an important innovation of the PSLRA") (citation omitted).

**2.    The Value Of The Benefit Rendered To Shareholders**

Courts have consistently recognized that the result achieved is a major factor to be considered in awarding attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[The] most critical factor is the degree of success obtained."). As set forth in the Settlement Approval Brief, the $37.5 million all cash recovery represents 17% of the maximum estimate of the Class's

losses, while the average in comparable cases is only 2.7% of investor losses. Thus, the benefit obtained by Co-Lead Counsel is significant.

Co-Lead Counsel obtained the Settlement solely through their own efforts and without the assistance of any regulatory agency or the necessity of a lengthy trial or post-trial appeal. This favorable Settlement was achieved as a result of extensive investigative efforts and settlement negotiations, as detailed in the Kairis Decl., and represents a remarkable recovery given the bankruptcies declared by the corporate defendants during the course of this litigation, the imprisonment of several of the individual defendants and the seizure of the assets of Lord Black. The Settlement Class will receive compensation for their losses in securities in Hollinger International and Hollinger Inc. despite the substantial risk of no recovery (in the absence of a Settlement) presented by automatic stay of claims against those entities under the U.S. Bankruptcy Code, which would preclude any recovery (absent those entities' trustees agreeing to honor the Settlement).

### 3.   The 22.5% Fee Request Is Fair As A Percentage Of The Fund

Under the "percentage-of-recovery" method, the court must determine what percentage of the recovery should be set aside to compensate class counsel, which can be based in part on the percentage fee paid to attorneys in a comparable class action. *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 974 (7th Cir. 1991) (percentage of recovery method "requires simply discerning the appropriate percentage from similar cases and multiplying"). A reasonable fee should reflect prevailing rates in the relevant market. *See In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 568 (7th Cir. 1992) (reversing district court's ruling on fee petition and holding that court erred by imposing hourly rate caps, failing to allow compensation at market rates, refusing to award risk multiplier, and cutting expenses).

The 22.5% sought by Co-Lead Counsel (which amounts to $8,437,500) is less than the prevailing contingency rate in the market, which is approximately 33 1/3%. For example, the court in *Meyenburg v. Exxon Mobil Corp.*, stated that "33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation." 2006 WL 2191422, at *2; *see also Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, 2004 WL 768658, at *1 ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action is not uncommon"); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1033 (N.D. Ill. 2000) (recognizing the established 30% benchmark for an award of fees in class actions); *Goldsmith v. Tech. Solutions Co.*, no. 92-C-4374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) (the market percentage method results in fee awards "equal to approximately one-third or more of the recovery"); *In re Abbott Lab. Sec. Litig.*, No. 92-3869, 1995 WL 792083 (N.D. Ill. July 3, 1995) (attorneys' fee of $10 million in a class action that settled for just over $30 million, a 31% fee, was reasonable under the percentage-of-recovery method and supported by petitioners' data of 98 cases where the fees awarded were 30% or more); *Berger v. Xerox Corp. Ret. Income Guarantee Plans,* No. 00-584-DRH, 2004 WL 287902, at *2 (S.D. Ill. Jan. 22, 2004) ("a 29% fee and $300,000.00 in costs and expenses award requested is at or below the market rate for this and similar litigation"); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 950 (N.D. Ill. 2001) (25% contingency fee found to be "eminently reasonable"); *see also Synthroid*, 325 F.3d at 976 (upholding 22% fee award plus costs and expenses).[7] This factor, too, supports approval of Co-Lead Counsel's fee request.

---

[7] *See also* Mongrue Decl. at ¶10 (finding the a reasonable fee to be between 26% to 32%).

4.     **The Contingent Nature Of The Case And The Risks And Uncertainties Of No Recovery**

A determination of a fair fee must include consideration of the contingent nature of the fee, the difficulties which were overcome in obtaining the settlement and the risks and uncertainties of prevailing. *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992) (district court erred in failing to award a risk multiplier because "[t]he need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent"); *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (in awarding fees in common fund cases, courts must consider "the risk of nonpayment").

Here, there were significant risks at the outset of the litigation presented by an unusual response in the price of Hollinger International stock which at times actually rose following the corrective disclosures. While Co-Lead Counsel believed, and intended to establish (with expert reports and testimony), that the Company's stock rose largely as a result of market expectations that the chief fraudster – Lord Black – would be ousted, there was a significant risk that Co-Lead Counsel would fail to establish loss causation – a necessary element of their claims.[8] Additionally, as Hollinger International, Hollinger Inc. and Ravelston all declared bankruptcy during the course of the Action, there was a substantial risk that recovery in this matter would be zero.

5.     **The Complexity Of The Case And The Quality Of The Representation**

Courts have recognized the complexities and difficulties of prosecuting securities class actions. *See Maley v. Del. Global Techs Corp.*, 186 F. Supp. 2d 3585, 392 (S.D.N.Y. 2002) ( a securities case "by its very nature, is a complex animal") (citations and internal quotation marks

---

[8] Loss causation issues received substantial attention in Defendants' second round of motions to dismiss.

omitted); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("Securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). Far from routine, this case presented complex legal issues throughout the more than five year course of the Action, including challenging issues of loss causation and standing, and, once the parties agreed to settle, how to craft a settlement agreement and related documents that would comport with the laws of both the United States and Canada. The quality of the representation by Co-Lead Counsel, who are experienced and highly regarded securities litigators,[9] in obtaining the all-cash recovery for the Class and engineering a cross-border settlement, likewise supports a fee award at the percentage requested. *See Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995) (fee award properly based in part on difficulty of the legal questions presented, the results obtained and the experience, reputation and ability of the attorneys).

## C.   The Fee Request Is Fair Under The Lodestar/Multiplier Analysis

An analysis of the 22.5% fee request under the lodestar/multiplier method further substantiates its fairness. Under the lodestar method, the court makes a determination of the number of hours that were "reasonably" spent on the case by counsel for the class, multiplies this by the hourly billing rate for lawyers of comparable skills, and then applies a multiplier to reflect such factors as the risk of losing the case (in which event there would be no fee at all) and the delay between the effort and the deferred compensation. *Harman*, 945 F.2d at 974; *see also Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988) (To determine a multiplier, the district court must attempt "a retroactive calculation of the probability of success as measured at the beginning of litigation"). As held by this Court in *Gary v. Sheahan*, No. 96-C-7294, 2001

---

[9] *See* Kairis Decl. at Ex. G; Declaration of Travis E. Downs III, dated May 28, 2009, at ¶2 ("Downs Decl."), filed simultaneously herewith.

WL 1543514, at *2 (N.D. Ill. Nov. 30, 2001), "[c]ourts awarding fees in the context of class actions have also applied a multiplier to the lodestar, in order to reflect the risk of losing the case and not being paid at all." In fact, as held in *Florin*, 34 F.3d at 565, a risk multiplier is "mandated" in a common fund case "if the court finds that counsel 'had no sure source of compensation for their services.'" (quoting *Continental Illinois*, 962 F.2d at 569).

Here, Co-Lead Counsel (along with other US Counsel) spent over 7,400 hours litigating this matter for a total lodestar of $3,638,616.25 and advanced expenses in the amount of $429,187.48.[10] For their efforts and the risks involved, Co-Lead Counsel seek a multiplier of 2.3 ($8,437,500 in fees requested divided by $3,638,616.25 in total lodestar), which is in-line with multipliers used in other cases. *See In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322, 325 (N.D. Ill. 1981) (using multiplier of 4); *Arenson v. Board of Trade*, 372 F. Supp. 1349 (N.D. Ill. 1974) (Bauer, J.) (using multiplier of 4.0 in an antitrust case where novel legal issues were presented); *Continental Illinois*, 962 F.2d at 569 (holding court abused discretion by refusing to award a risk multiplier that reflected the "risky character of their undertaking"); *Harman*, 945 F.2d at 976 (appropriate risk multiplier can range "anywhere between one and four"). Driving this multiplier is the fact that the case was contingent and could have resulted in no recovery due to Defendants' inability to pay or Plaintiffs' inability to succeed on the merits of their claims (as a result, for instance, of a failure to establish loss causation).[11] *See Continental Illinois*, 962 F.2d at 569 (district court's refusal "to award a risk multiplier . . . to reflect the risky character of [plaintiffs'

---

[10] Kairis Decl. at ¶54; Downs Decl. at ¶5; Declaration of Carol V. Gilden, dated May 28, 2009, at ¶¶6-7 ("Gilden Decl."); Declaration of David Kessler, dated May 28, 2009, at ¶6 ("Kessler Decl."); Declaration of Bruce McNew, dated May 27, 2009, at ¶5 ("McKnew Decl."); Declaration of John T. DeCarlo, dated May 27, 2009, at ¶6 ("DeCarlo Decl."). These Declarations have been filed simultaneously herewith.

[11] Kairis Decl. at ¶¶48-50.

counsel's] undertaking . . . was error in a case in which the lawyers had no sure source of compensation for their services").

Co-Lead Counsel devoted an immense amount of time and effort to this Action, overseeing multiple litigations in the United States and Canada, over an extended period of time after having conducted a time-consuming investigation.[12]   Co-Lead Counsel aggressively litigated this matter with full commitment to the rights of the Class and produced high quality work despite the high likelihood that there could be nothing to show for it at the end.   Their efforts were necessary to obtain the favorable result for the Class, and Co-Lead Counsel should be awarded a multiplier for the risk they undertook in expending their time and expense.

### D.   The Reaction Of The Class Supports The Requested Fee Award

As set forth in the Miller Declaration (at ¶¶10-12), following a widespread notice program, there have been only two class members who have opted out of the Settlement, and none who have objected to Co-Lead Counsel's fee request.   This reaction by the Class fully supports the requested fee award. *See In re Lucent Tech. Sec. Litig.*, 327 F. Supp. 2d 426, 435 (D.N.J. 2004) (lack of significant objections was "strong evidence" of reasonableness of fee request).

### E.   The Court Should Award Co-Lead Counsel Its Reasonable Expenses

Co-Lead Counsel (and the other US Counsel) have incurred total costs and expenses in an aggregate amount of $429,187.48.[13]   All of these expenses were reasonably incurred in the prosecution of this litigation. *Id.*

The Seventh Circuit allows recovery of expenses, such as "filing fees, photocopying, postage, telephone and delivery charges" and computerized research. *Burda v. M. Ecker Co.*, 2

---

[12] Kairis Decl. at ¶¶5-25.

[13] Kairis Decl. at ¶52; Gilden Decl. at ¶¶4, 7; Downs Decl. at ¶4; Kessler Decl. at ¶4; DeCarlo Decl. at ¶4.

13

F.3d 769, 778 (7th Cir. 1993). Thus, an award of Co-Lead Counsel's (and other US Counsel's) total expenses to date of $429,187.48 is appropriate, especially since no member of the Settlement Class has objected to the request for reimbursement of expenses to be paid to Counsel under the Settlement.

F.      **The Court Should Award The Claims Administrator Its Fees**

Pursuant to the Settlement, the Claims Administrator's fees and costs in the amount of $204,017 for work performed administering the Settlement and distributing the Settlement proceeds to Class members would also be paid out of the Settlement funds.[14] The rates charged by the Claims Administrator are in-line with rates charged by the Claims Administrator in similar class actions.[15] No member of the Settlement Class has objected to the amount of fees and costs to be paid to the Claims Administrator under the Settlement.

IV.     **CONCLUSION**

For the foregoing reasons, Settlement Class Representatives respectfully request that the Court approve the application for attorneys' fees and expenses to be paid to Counsel and the Claims Administrator and enter the order awarding Co-Lead Counsel 22.5% of the Settlement

---

[14] *See* Kairis Decl., Exhibit A, Stipulation at ¶37. *See also* Miller Decl. at ¶13.

[15] Miller Decl. at ¶14.

Fund, in the amount of $8,437,500, plus $429,187.48 in expenses, plus interest earned thereon at the same rate and for the same period as that earned on the Settlement Fund until paid.

Dated:  June 4, 2009

Respectfully submitted,

Jay W. Eisenhofer
John C. Kairis
Grant & Eisenhofer P.A.
Chase Manhattan Centre
1201 North Market Street
Wilmington, Delaware 19801
Telephone:  (302) 622-7000
Facsimile:  (302) 622-7100
Attorneys for Lead Plaintiff Teachers' Retirement
System of Louisiana, Class Representative Cardinal
Mid-Cap Value Equity Partners, L.P. and Co-Lead
Counsel for the Settlement Class

Carol V. Gilden
Cohen Milstein Sellers & Toll P.L.L.C.
39 South LaSalle Street, Suite 1100
Chicago, Illinois 60603
Telephone:  (312) 357-0370
Facsimile:  (312) 357-0368

Liaison Counsel for the Settlement Class

Darren J. Robbins
Travis E. Downs, III
Ellen Gusikoff Stewart
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone:  (619) 231-1058
Facsimile:  (619) 231-7423
Attorneys for Plaintiff Washington Area Carpenters
Pension and Retirement Fund, Class Representative
Cardinal Mid-Cap Value Equity Partners, L.P. and
Co-Lead Counsel for the Settlement Class